STATE OF NORTH CAROLINA v. WILLIAM JUNIOR AMERSON AND CONRAD KEITH AMERSON

No. 41A85

(Filed 5 March 1986)

**Rape and Allied Offenses § 6.1— defendants aiding and abetting each other—first degree rape—instruction on second degree rape not required**

Defendants in a first degree rape case were not entitled to a jury instruction on second degree rape where the State's evidence tended to prove a first degree rape in that defendants aided and abetted each other in the commission of the crime; defendants' evidence did not conflict with the State's evidence as to whether each defendant aided and abetted the other; and defendants' evidence itself was sufficient to support the jury in finding the element of aiding and abetting by acts of encouragement and protection where it tended to show that defendants were bound together by friendship and by blood and that each defendant was either inside the car or leaning against the outside of it while the other defendant was perpetrating the rape in the back seat of the car.

APPEAL by the defendants from judgments entered on 8 November 1984, by *Smith, J.,* in Superior Court, LEE County. Heard in the Supreme Court on 18 December 1985.

*Lacy H. Thornburg, Attorney General, by Angeline M. Maletto, Associate Attorney, for the State.*

*W. W. Seymour, Sr. for the defendant appellant Conrad Keith Amerson.*

*K. R. Hoyle for the defendant appellant William Junior Amerson.*

MITCHELL, Justice.

The defendants were each convicted upon proper indictments of first degree rape. Each defendant appealed his conviction and mandatory sentence of life imprisonment to this Court as a matter of right.

By their assignments, the defendants contend that their convictions must be reversed and a new trial ordered because the trial court refused to comply with their timely request that the jury be instructed on the lesser included offense of second degree rape. Although the defendants' counsel have argued this point most ably, we do not agree.

The evidence for the State tended to show that between 7:00 p.m. and 8:00 p.m. on 10 November 1983, the victim was walking along Horner Boulevard in Sanford, North Carolina headed to a friend's house. A car containing the defendants blocked her path. She testified that the defendant William Amerson got out, grabbed her arm and waist and pulled her into the back seat of the car. The defendant Conrad Amerson was in the front seat. The victim began screaming and hitting the driver. She started crying and repeatedly asked to be let out but was told to "shut up."

The victim was driven to a wooded area where the car was stopped. William got into the back seat with her. She testified that "[h]e was trying to kiss me and put his hands on me and I kept screaming for him to stop and leave me alone." William pushed her down and Conrad "leaned over the back of the seat and he put his hands on my mouth and my nose and he was tell-

ing me to shut up and to quit crying, and then he put his knees over my hands." William pulled the victim's pants down and had forceable vaginal intercourse with her against her will. Conrad then removed his knees and hands from the victim. She tried to hit both of the defendants and told them to stop. Each defendant told her that if she did not stop crying they would hurt her.

The victim testified that William got off of her and "switched places" with Conrad. Conrad then had forceable vaginal intercourse with the victim against her will while William licked her leg. Both defendants got out of the car and had an argument. William then got back into the car and had forceable vaginal intercourse with her again. When this act of intercourse began Conrad was outside of the car, but he got back in before it was completed. When William finished he told the victim to put her clothes back on, and she did so. She was driven back into town, told "not to say nothing," and was let out.

The defendant Conrad Keith Amerson testified that on the night of 10 November 1983 he was riding around with his cousin William. They saw the victim walking and asked her if she needed a ride. She said yes and got into the back seat of the car voluntarily. They then drove to a wooded area where Conrad got into the back seat and had consensual vaginal intercourse with the victim. Conrad testified that he then got into the front seat and William got into the back seat with the victim. It was hot inside, so Conrad got out and leaned against the outside of the car. He denied ever holding the victim while William was in the back seat with her or assisting William in any way.

The defendant William Junior Amerson testified that the victim entered his car voluntarily on 10 November 1983 in order to get a ride to the bowling alley. He testified that his cousin Conrad was the first to have sexual intercourse with the victim. William was in the front seat and did not even look into the back seat while Conrad was with the victim. When Conrad left the victim, William got in the back seat and had consensual vaginal intercourse with the victim. William testified that he then drove the victim to a car wash and let her out.

The defendants contend that the trial court committed prejudicial error by refusing to instruct the jury as to second degree

rape, a lesser included offense of first degree rape. We do not agree.

N.C.G.S. § 14-27.2 (1981 and Cum. Supp. 1985) provides in pertinent part that:

> (a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:
>
>     . . . .
>
> (2) With another person by force and against the will of the other person, and;
>
>     . . . .
>
>         c. The person commits the offense aided and abetted by one or more other persons.

The victim testified in this case that the defendants engaged in vaginal intercourse with her by force and against her will. The defendants testified that the victim consented. In returning its verdicts finding the defendants guilty under the instructions given by the trial court, the jury necessarily found that the acts of vaginal intercourse in question were by force and against the victim's will. Therefore, the jury accepted the victim's testimony and rejected the defendants' testimony in this regard.

The defendants contend that, even so, evidence was introduced at trial tending to show that neither defendant aided or abetted the other. The defendants argue that the trial court was required to submit a possible verdict of second degree rape, because such evidence would support a jury finding that the defendants did not aid or abet each other and therefore were guilty only of the lesser included offense of second degree rape.

In support of their contention, the defendants rely on the following testimony:

> Q. [to Conrad Amerson] After you had sex, what happened then?
>
> A. After I had sex with her, I got up and I got in the front seat and then my cousin, he went back there, and along this time it got real hot in the car. So I had stepped outside of the car and I was leaning up against the car and my cousin was back there with her.

Q. While your cousin was having sex, did you hold her or anything like that?

A. No, sir. Why would I have to hold her.

Q. No, just answer the question.

A. No sir, I didn't hold her.

Q. And at any time did you assist your cousin in having sex with her?

A. What you mean 'assist'?

Q. By holding her or anything like that?

A. No, sir.

. . . .

Q. [to William Amerson] After you parked the car what, if anything, happened in your car?

A. Well, I continued to set in my driver's seat and my cousin, Conrad, you know, we sat there about fifteen minutes, I would say about fifteen minutes, and Conrad, he got out of the car and got in the back seat with [the victim].

Q. At that time did she make any complaints or cries for help.

A. No, sir, she did not, she didn't.

Q. Were you still sitting in the front seat?

A. Yes, I did, I continued to sit there and I was listening to my music.

Q. Were you able to tell what was going on in the back seat?

A. I could tell they was, you know, ready to have sexual intercourse with each other. That's about all I could tell you, because see, it was dark, it was really dark, you know, because my car haven't got no interior light in there and it was back in the woods.

Q. Did you look around at any time while your cousin was in the back seat with [the victim]?

A. No, sir, I did not.

This Court speaking through Justice Frye recently stated:

> The law is well settled that the trial court must submit and instruct the jury on a lesser included offense when, and only when, there is evidence from which the jury could find that defendant committed the lesser included offense. However, when the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged, the trial court is not required to submit and instruct the jury on any lesser included offense. The determining factor is the presence of evidence to support a conviction of the lesser included offense.

*State v. Boykin,* 310 N.C. 118, 121, 310 S.E. 2d 315, 317 (1984) (citations omitted).

Based upon their foregoing quoted testimony, the defendants argue that the jury could have believed that the defendants each had intercourse with the victim against her will but that each acted independently and did not aid or abet the other. The defendants contend that such evidence tended to negate the aiding and abetting element of first degree rape and thereby tended to prove second degree rape. Therefore, they contend that the trial court erred by refusing to instruct the jury with regard to the lesser included offense of second degree rape.

We reject the defendants' contention because their testimony did not tend to negate the evidence that each aided and abetted the other during the commission of the crimes charged. Justice Lake writing for this Court in *State v. Rankin,* 284 N.C. 219, 223, 200 S.E. 2d 182, 185 (1973) best summarized the law in this area when he stated:

> The mere presence of the defendant at the scene of a crime, even though he is in sympathy with the criminal act and does nothing to prevent its commission, does not make him guilty of the offense. To sustain a conviction of the defendant, as [a] principal . . ., the State's evidence must be sufficient to support a finding that the defendant was present, actually or constructively, with the intent to aid the perpetrator in the commission of the offense should his as-

sistance become necessary and that such intent was com-
municated to the actual perpetrator. Such communication of
intent to aid, if needed, does not, however, have to be shown
by express words of the defendant, but may be inferred from
his actions and from his relation to the actual perpetrator.
'When the bystander is a friend of the perpetrator and knows
that his presence will be regarded by the perpetrator as an
encouragement and protection, presence alone may be re-
garded as an encouragement.'

(Citations omitted); *State v. Haywood,* 295 N.C. 709, 718-19, 249
S.E. 2d 429, 435 (1978). *See State v. Walden,* 306 N.C. 466, 476,
293 S.E. 2d 780, 786-87 (1982) (mother present when child beaten
but took no steps to prevent attack).

In this case the testimony of each defendant tended to show
that he was close by when the other was having intercourse with
the victim. Conrad testified that he was sitting in the front seat
of the car part of the time and leaning against the outside of the
car the remainder of the time while William was having inter-
course with the victim. William testified that he was sitting in the
front seat listening to music when Conrad was having intercourse
with the victim. The defendants in this case were bound together
both by friendship and by blood. The defendants' testimony and
the relationship of each defendant to the other were consistent
with a jury determination that each defendant knew and intended
that the other would regard his presence as an encouragement
and protection. Therefore, the defendants' evidence *did not tend
to negate the element of aiding and abetting. Id.*

The victim's testimony also tended to show that the defend-
ants aided and abetted one another. She testified that while
William drove the car, Conrad tried to hold her down in the back
seat. She stated that Conrad held her down while William had in-
tercourse with her and that William then "switched places" with
Conrad.

Neither the defendants' testimony nor the victim's testimony
tends to show that either of the defendants did not aid and abet
the other. If the jury had believed the defendants' assertion that
the victim consented to sexual intercourse, it would never have
reached the question of aiding and abetting. The jury having
determined as it did in the present case, however, that the inter-

course was by force and against the victim's will, the defendants' evidence as well as the State's could only be construed as tending to show that each defendant aided and abetted the other. *See, e.g., State v. Walden,* 306 N.C. 466, 293 S.E. 2d 780; *State v. Haywood,* 295 N.C. 709, 249 S.E. 2d 429.

We hold that the defendants were not entitled to a jury instruction on second degree rape because there was no evidence introduced to support such a lesser offense. The State's evidence tended to prove a first degree rape. The defendants' evidence did not conflict with the State's evidence *as to whether each defendant aided and abetted the other.* Instead, the defendants' evidence itself was sufficient to support the jury in finding *the element of aiding and abetting* by acts of encouragement and protection. Their evidence conflicted with the State's evidence only on the issue of consent. The jury could have found the defendants guilty of first degree rape or not guilty. There was simply no evidence tending to show an absence of aiding and abetting which would have required a jury instruction as to second degree rape. Therefore, the trial court did not err in refusing the defendants' request to instruct the jury on second degree rape.

No error.