STATE OF NORTH CAROLINA v. CLARENCE RICHARDSON

No. 9226SC958

(Filed 5 October 1993)

**1. Homicide § 648 (NCI4th)— closing arguments—statement by court concerning self-defense—no prejudice**

There was no prejudice in a prosecution for second-degree murder where, when the prosecutor repeated in closing arguments defense counsel's analogy comparing the right to defend a place of business to the right to defend one's home, the judge interrupted him, saying, "Don't use home. The rules for the home, for defense of home, are different from those of other premises." The judge's eventual charge to the jury that a person may stand his ground and has no duty to retreat from his place of business cleared up any confusion, real or inferred, allegedly caused by his interruption of the prosecutor.

**Am Jur 2d, Homicide § 519 et seq.**

**2. Homicide § 596 (NCI4th) — second-degree murder — self-defense — instruction on belief that killing victim necessary — erroneous**

The trial court erred in a second-degree murder prosecution when instructing the jury on perfect self-defense by stating that it must have appeared to defendant and he believed it necessary to kill the victim. Submitting that element of perfect self-defense as stated reads into the defense an intent to kill which is not part of second-degree murder, and renders impermissibly easier the State's burden of disproving the first element or the second element of perfect self-defense since the circumstances that would justify the reasonableness of an intent to kill in self-defense would be graver than those justifying the reasonableness of an intentional killing, as that phrase is defined. Submitting the defense in terms of defendant's belief that it was "necessary to shoot [or use deadly force against] the deceased in order to save himself from death or great bodily harm," will rectify the problem and will render sensible the fourth element, allowing the jury to determine whether defendant's killing in self-defense constituted excessive force.

**Am Jur 2d, Homicide § 519 et seq.**

Appeal by defendant from judgment entered 5 March 1992 by Judge Robert D. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 31 August 1993.

On 5 August 1991, defendant was indicted by the grand jury for two counts of murder, pursuant to N.C. Gen. Stat. § 14-17 (Supp. 1992), and one count of assault with a deadly weapon with intent to kill inflicting serious injury, pursuant to N.C. Gen. Stat. § 14-32(a) (1986). The jury found defendant guilty of two counts of second degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury. From the convictions of second degree murder, defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General John G. Barnwell, for the State.*

*Assistant Public Defender Marc D. Towler for defendant-appellant.*

STATE v. RICHARDSON

[112 N.C. App. 252 (1993)]

MCCRODDEN, Judge.

On appeal, defendant raises two issues: (I) whether the trial court committed prejudicial error when it interrupted the prosecutor's closing argument to comment that the rules for defending the home are different from the rules for other premises, and (II) whether the trial court erred in instructing the jury that it could find that the defendant acted in self-defense only if he reasonably believed it necessary to *kill*, as opposed to *shoot*, in self-defense.

The evidence at trial showed that shortly after midnight on 18 July 1991, defendant, who was the acting manager of the Leather and Lace Club, shot three brothers, Brian, Barry, and James Kirkpatrick. James Kirkpatrick was hospitalized for ninety days and survived bullet wounds to his elbow, hip, and abdomen, but Brian and Barry Kirkpatrick died on the sidewalk in front of the Leather and Lace.

On 17 July 1991, after an evening of drinking beer and whiskeys and Coke, the three brothers arrived at the Leather and Lace but were denied admission by an employee, Dick Pincelli, because he believed that James Kirkpatrick was intoxicated. (The blood alcohol content of James Kirkpatrick, who was 6'6" tall and weighed 305 pounds, was equivalent to a breathalyzer reading of .21. In addition to his alcohol consumption, James Kirkpatrick, a Doctor of Dental Surgery, had also taken a Percodan capsule, a narcotic commonly prescribed for dental pain, around 5:30 p.m. that same day. Brian Kirkpatrick was 5'11" tall and weighed 216 pounds, and his blood alcohol content was the equivalent of .14 on the breathalyzer. Barry Kirkpatrick was six feet tall and weighed 182 pounds, and his blood alcohol content was the equivalent of .19 on the breathalyzer.)

After Pincelli denied the three brothers admittance to the club, the men exchanged profanities. James Kirkpatrick pushed the admissions window in, and Pincelli told the brothers that they would have to leave and warned that the police had been called.

Witnesses' accounts of the confrontation between defendant and the three brothers differ. James Kirkpatrick testified as follows: after being informed that the police had been called, the brothers left the club's foyer; as they were returning to their cars, they heard a yell from the door; the brothers turned toward the door,

and Barry Kirkpatrick reached the door and leaned on it; James Kirkpatrick grabbed him, saying, "Come on, Barry. It's not worth it." Then four shots were fired.

Defendant testified that at about midnight he was taking inventory in a back room of the Leather and Lace when he heard a commotion and someone yelling that the bartender needed him. As defendant approached the foyer, he partially pushed the door open toward the foyer, and a large arm shoved the door back into his face. Defendant returned to his office and obtained a .45 calibre pistol from the desk drawer. The bartender advised defendant that 911 had been called and that the brothers were outside the glass door. Defendant testified that the following events happened in five to ten seconds: as defendant approached the glass door, he saw Barry Kirkpatrick leaning against the door and Brian and James Kirkpatrick arguing with each other about six feet from Barry. After defendant told the brothers that they needed to leave, Barry replied that he would "kick [defendant's] ass;" Brian Kirkpatrick began fighting with Danny Thompson, a customer. The glass door slammed into defendant, pinning his right arm, and James Kirkpatrick reached through the opening, grabbed defendant, and said, "You f— with us, we will kill you." Defendant then shot the three brothers.

Defendant went back inside the Leather and Lace to wait for the police. He placed the gun on the bar. When the police arrived, he told them, "I did it, they was all over me." Defendant, who was 6'2" tall and weighed 180 pounds, testified that at the time he fired the shots he was scared because James Kirkpatrick, who had threatened to kill him, outweighed him by 120 to 130 pounds.

I.

[1] Defendant first contends that the trial court erred by stating during the prosecutor's closing arguments that the rules for defending the home are different from those for defending other premises. The record reflects that, during his closing argument, counsel for the defendant analogized the right to defend a person's place of business to the right to defend one's home. When the prosecutor used the same analogy during his closing argument, the judge interrupted him, stating: "Don't use the home. The rules for the home, for defense of the home, are different from those of other premises."

STATE v. RICHARDSON

[112 N.C. App. 252 (1993)]

Defendant argues that this statement was improper and prejudicial because it was an incorrect statement of law as applied to the absence of a duty to retreat, and because it implied that a person has a greater right to defend himself in his home than in his place of business. We find no error.

Although counsel is allowed wide latitude in closing arguments, the trial judge may exercise his discretion in limiting those arguments. *State v. Whiteside*, 325 N.C. 389, 398, 383 S.E.2d 911, 916 (1989). In his argument, defendant infers from the trial court's interruption of the prosecutor that there are different rules concerning the duty to retreat for defense of one's home and defense of one's business. Specifically, defendant asserts that the judge misstated the law regarding the duty to retreat since a person who is assailed, without any fault of his own, has no duty to retreat either from his home or his place of business. *State v. Lee*, 258 N.C. 44, 127 S.E.2d 774 (1962). Our review of the record, however, shows that the judge never stated that an assailed person has a duty to retreat from his place of business, and we decline to infer that his comment indicated that there are different rules regarding the duty to retreat in the home and in the place of business.

The judge's eventual charge to the jury that a person may stand his ground and has no duty to retreat from his place of business cleared up any confusion, real or inferred, allegedly caused by his interruption of the prosecutor. Hence, we find no prejudice to the defendant, and we overrule this assignment of error.

II.

[2] We now turn to defendant's contention that the trial court gave an erroneous instruction on self-defense to the jury. Specifically, defendant argues that the trial court should have modified the jury instruction on self-defense to state that it appeared to the defendant and he reasonably believed it to be necessary to "*shoot* the victim", rather than "*kill* the victim", to save himself from death or great bodily harm. Defendant argues that the jury instruction as presented by the trial court deprived him of imperfect self-defense.

The elements which constitute perfect self-defense are:

(1) [I]t appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992). Under the law of perfect self-defense, a defendant is excused altogether if, at the time of the killing, all of the four elements existed. *Id.* at 595-96, 417 S.E.2d at 497. On the other hand, a defendant is guilty of voluntary manslaughter pursuant to the principle of imperfect self-defense if the State fails to disprove elements (1) and (2), but disproves either element (3) or element (4). However, if the State disproves either element (1) or element (2), the correct verdict is murder, not voluntary manslaughter. *Id.* at 596, 417 S.E.2d at 497.

The Supreme Court in *McAvoy* resolved two conflicting lines of precedent about the appropriate homicide verdict for a killing based upon an honest but unreasonable belief in the need to kill in self-defense, and held that an honest but unreasonable belief that deadly force was necessary will result in a verdict of murder rather than manslaughter. *Id.* at 601, 417 S.E.2d at 500. Defendant asserts, however, that *McAvoy* did not resolve the logical inconsistency between the verdict of murder when the State disproves element (1) or element (2) and the verdict of voluntary manslaughter when the State disproves element (4). According to defendant's analysis, a killing based upon an unreasonable belief in the need to kill in self-defense is identical to the use of excessive force, since a person cannot kill excessively. Thus, it is inconsistent to instruct the jury to convict defendant of murder if defendant's belief was unreasonable, but to instruct the jury to convict defendant of manslaughter if defendant's belief was reasonable but he used excessive force.

Defendant suggests that this Court should resolve the inconsistency by modifying the language in elements (1) and (2) to state

that the defendant reasonably believed it to be necessary to use "deadly force" or to "shoot" the victim to save himself from death or great bodily injury. Therefore, according to this argument, a defendant would be guilty of at least voluntary manslaughter, if he had the intent to wound but not to kill an aggressor, but used excessive force resulting in the death of the aggressor. For somewhat different reasons, we believe defendant's argument has merit.

In *State v. Ray*, the Supreme Court noted:

Neither second degree murder nor voluntary manslaughter has as an essential element an intent to kill. In connection with these two offenses, the phrase "intentional killing" refers not to the presence of a specific intent to kill, but rather to the fact that the *act* which resulted in death is intentionally committed and is an act of assault which in itself amounts to a felony or is likely to cause death or great bodily injury.

299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980). Submitting to the jury the first element of perfect self-defense as quoted, *i.e.*, that "it appeared to the defendant and he believed it to be necessary to *kill* the deceased in order to save himself from death or great bodily harm," reads into this defense an element (intent to kill) that is not part of second degree murder. That submission also renders impermissibly easier the State's burden of disproving the first element or the second element of perfect self-defense since the circumstances that would justify the reasonableness of an intent to kill in self-defense would be graver than those justifying the reasonableness of an intentional killing, as that phrase is defined.

It is significant to our decision that the trial court did not submit to the jury a charge of first degree murder. Since we are not confronted with a situation in which the jury had to decide if the defendant were guilty of first or second degree murder, we do not determine the proper instruction for perfect self-defense under those circumstances. We are aware, however, that *State v. Watson* (No. 359A91), pending now before the Supreme Court, raises the question of whether the instruction on self-defense should state *deadly force* rather than *kill* in a case in which the judge submitted to the jury the charges of first and second degree murder and manslaughter.

In summary, we conclude that the trial court erred in instructing the jury on perfect self-defense as it relates to second degree

RAY v. ATLANTIC CASUALTY INS. CO.

[112 N.C. App. 259 (1993)]

murder. Submitting the defense in terms of defendant's belief that it was "necessary to shoot [or use deadly force against] the deceased in order to save himself from death or great bodily harm," will rectify the problem. It will also render sensible the fourth element, allowing the jury to determine whether defendant's killing in self-defense constituted excessive force.

Based upon the foregoing, we must reverse the trial court's action and order a new trial.

New trial.

Judges WELLS and ORR concur.