STATE OF NORTH CAROLINA v. MONTRICK DWAYNE BURTON AND
PATRICK BURDEN

No. 944SC154

(Filed 1 August 1995)

### 1. Criminal Law § 319 (NCI4th)— motion to join granted—defendant not prejudiced

The trial court did not err in granting the State's motion for joinder of defendants for trial on murder charges since the State presented plenary evidence of defendant's guilt, apart from his codefendant's testimony; defendant had the opportunity to cross-examine his codefendant vigorously; the antagonistic defenses in this case did not prejudice defendant; a purported statement by the codefendant was in fact not a statement against the codefendant's penal interest but was instead a conclusion drawn by the investigating officer; and the trial court's error in failing to allow impeachment of the codefendant was harmless error. N.C.G.S. §§ 15A-926(b)(2)(a), 15A-927(c)(2).

**Am Jur 2d, Criminal Law § 178.**

### 2. Evidence and Witnesses § 308 (NCI4th)— gun fired earlier by defendant—admissibility of evidence to show identity of defendant as perpetrator

Evidence that defendant was firing the gun in question shortly before the events giving rise to this homicide prosecution was admissible to prove defendant's identity as the person who fired the stray 9 mm bullet which killed the victim. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 452, 453.**

### 3. Homicide § 338 (NCI4th)— killing by stray bullet—sufficiency of evidence of defendant as perpetrator—sufficiency of evidence of acting in concert

The evidence was sufficient to be submitted to the jury in a prosecution for involuntary manslaughter where it tended to show that the victim, a four-year-old resident of a trailer park, was killed by a stray bullet as she sat on her father's lap; it was defendant who fired the 9 mm gun, killing the child; or it was the codefendant who fired the 9 mm gun and defendant acted in concert with him.

Am Jur 2d, Homicide §§ 425, 442.

**4. Homicide § 319 (NCI4th)— voluntary manslaughter— defendant as aider and abettor—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction for voluntary manslaughter by aiding and abetting where defendant was present at the crime scene and had just shortly before fired a gun toward the group of which the victim was a party; defendant encouraged the codefendant, his cousin, to shoot the victim; the victim repeatedly cursed at, taunted, and persisted in provoking a response by defendants; the perpetrator shot the victim as the victim approached and was in fear for his life at that moment; and the victim was unarmed throughout the encounter.

Am Jur 2d, Homicide §§ 425, 442.

**5. Homicide § 620 (NCI4th)— self-defense instruction— defendant as aggressor—sufficiency of evidence to support instruction**

The evidence supported the trial court's instruction that defendant would not be entitled to the benefit of self-defense if he were the aggressor with the intent to kill or inflict serious bodily harm upon the victim where the evidence tended to show that the unarmed victim cursed and taunted defendant and his codefendant from outside their trailer; and defendant and the codefendant came outside and began shooting, with defendant telling the codefendant, "Shoot him, shoot him. I'll get you out of jail."

Am Jur 2d, Homicide § 519.

Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.

**6. Criminal Law § 929 (NCI4th)— codefendant guilty of second-degree murder—defendant guilty of voluntary manslaughter—no reversal on ground of inconsistent verdicts**

There was no merit to defendant's contention that the verdicts finding him guilty of voluntary manslaughter as an aider and abettor and his codefendant, who fired the fatal bullet, guilty of second-degree murder were inconsistent and that the judgment against him should therefore be reversed, since there was suffi-

cient evidence of defendant's guilt of voluntary manslaughter, and his conviction of a lesser charge may have been a demonstration of the jury's leniency toward him.

**Am Jur 2d, Trial § 1814.**

**Inconsistency of criminal verdicts as between two or more defendants tried together. 22 ALR3d 717.**

7. **Criminal Law § 1149 (NCI4th)— use of weapon normally hazardous to more than one person—finding of aggravating factor proper**

The trial court did not err in finding as an aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person where the evidence showed that the victim was killed by a bullet fired from a 9 mm semi-automatic handgun, a gun which could hold between eight and sixteen bullets and which could fire bullets as fast as the shooter could pull the trigger. N.C.G.S. § 15A-1340.4(a)(1)(g).

**Am Jur 2d, Criminal Law §§ 598, 599.**

8. **Criminal Law § 1234 (NCI4th)— age of defendant—no mitigating factor**

Evidence that defendant was seventeen years old at the time of the crime was insufficient, standing alone, to support a finding of the mitigating factor regarding immaturity, N.C.G.S. § 15A-1340.4(a)(2)(e).

**Am Jur 2d, Criminal Law §§ 598, 599.**

9. **Homicide § 630 (NCI4th)— second-degree murder—reasonable belief in need to kill victim—self-defense instruction proper**

The trial court did not err in instructing that defendant would be excused of second-degree murder if it appeared to him and he believed it to be necessary to kill the victim, not just to use deadly force, in order to save himself or others from death or great bodily harm where all of the evidence showed an intent to kill.

**Am Jur 2d, Homicide § 519.**

**Accused's right, in homicide case, to have instructed as to both unintentional shooting and self-defense. 15 ALR4th 983.**

**STATE v. BURTON**

[119 N.C. App. 625 (1995)]

Appeal by defendants from judgments and commitments entered 10 May 1993 by Judge James R. Strickland in Onslow County Superior Court. Heard in the Court of Appeals 5 April 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Charlie C. Walker, for the State.*

*Gaylor, Edwards, Vatcher & Bell, by Walter W. Vatcher, for defendant-appellant Montrick Dwayne Burton. Edward G. Bailey for defendant-appellant Patrick Burden.*

LEWIS, Judge.

Defendants were indicted for the murders of Brittany James and Carlos Howard and were tried jointly. The jury found defendants Burton and Burden guilty of involuntary manslaughter for the death of James; Burton was also found guilty of voluntary manslaughter for the death of Howard. The jury found defendant Burden guilty of second-degree murder for the death of Howard. Burton was sentenced to ten years for involuntary manslaughter and six years for voluntary manslaughter. Burden was sentenced to ten years for involuntary manslaughter and thirty years for second-degree murder. From the judgments and commitments, defendants appeal.

The evidence tended to show that on 29 April 1992 at around 8:00 p.m., defendant Burton, then seventeen, went with his cousin, defendant Burden, then twenty-two, and their cousin, Bernard Jones, to Heath's Pawn Shop in Jacksonville, North Carolina. While the three were in Burden's car in the parking lot, a group of people, including Carlos Howard, approached the car. Howard believed that Burden, whom he did not know, had shot at him a few days earlier. Upon seeing Burden's car on 29 April, Howard had followed defendants to the pawn shop. In the parking lot of the pawn shop, Howard asked Burden why he had shot at him. Howard and a friend named Earl Roy then began punching defendants, who were still in Burden's car. Burden began to drive away, and one of the passengers fired a 9mm handgun out the window. Earl Roy testified that Burton fired the shots, but others testified that it was Bernard Jones who fired the shots.

Defendants and Jones then drove to the home of another cousin, Roland Burton, in McDowell's Mobile Home Park. The Howard group also drove to the mobile home park, where they visited friends at a

trailer at Lot 5. At the park, Howard learned that defendants were in Roland Burton's trailer at Lot 11. The Howard group approached Lot 11 and Howard and defendants exchanged unpleasantries. At some point, defendants came out of the trailer, armed with a .38-caliber revolver and a 9mm semi-automatic handgun, and began firing. No one in the Howard group was armed. According to Roy, Burton told Burden, "Shoot him, shoot him. I'll get you out of jail." Howard then responded, "Shoot me, shoot me." After defendants began shooting, two neighbors came outside. The neighbors, Ginnie Champion and Mistie Anderson, testified that Burton and Anderson "had words" and that Burton pointed his gun at Anderson. Anderson testified that Burden (not Burton) then shot at her, missing her but hitting the trailer at Lot 7.

At some point during all the gunfire, three stray bullets entered the trailer at Lot 4. One of the bullets struck four-year-old Brittany James as she sat on her father's lap. The bullet exited her body, and no bullets were found in her body. The three spent projectiles found in the James trailer were all from CCI 9mm bullets. Brittany died as a result of the gunshot wound.

The testimony of the witnesses was in conflict as to which defendant fired the 9mm gun, and each defendant testified that it was the other who fired the 9mm gun that evening. The testimony on this point will be set out below, as needed to address defendants' arguments.

After the shots were fired outside Roland Burton's trailer, defendants went back inside the trailer. At some point, Howard began banging on the door of the trailer and shouting. He also punched out a window next to the door. Burden opened the door, and, according to Roy, said to Howard, "You don't think I'll shoot you, do you?" Burden then shot Howard two times with the .38-caliber revolver, once in the neck and once in the arm. Howard was standing two or three feet from Burden at the time. Howard died as a result of the gunshot wounds.

Burden and Burton then left their cousin's trailer and went to Burden's home. Officers found defendants hiding in the attic a short time later. Neither of the guns used in the shootings was found. Throughout these machinations, the defendants and the Howard group exchanged vulgarities which are omitted.

Defendant Burton's Appeal

I.

[1] Defendant Burton's first contention is that the trial court erred in granting the State's motion for joinder of defendants for trial and in denying his motions to sever, made before and during the trial. N.C.G.S. § 15A-926(b)(2)(a) authorizes joinder of two or more defendants where the State seeks to hold each defendant accountable for the same crimes. *State v. Rasor*, 319 N.C. 577, 581, 356 S.E.2d 328, 331 (1987). However, N.C.G.S. § 15A-927(c)(2) requires the court to grant severance whenever it is necessary to promote or achieve a fair determination of guilt or innocence. *Id.* The question of whether the defendants should be tried jointly or separately pursuant to these provisions is within the sound discretion of the trial judge. *Id.* Without a showing that joinder has deprived a defendant of a fair trial, the trial judge's discretionary ruling on the question will not be disturbed on appeal. *Id.* Defendant contends the trial court's ruling deprived him of a fair trial for two reasons.

First, defendant contends that his defense and Burden's defense were so antagonistic that a fair trial could not be had. The existence of antagonistic defenses alone, however, does not necessarily warrant severance. *Id.* at 582, 356 S.E.2d at 332. The test under section 15A-927(c)(2) is whether the conflict in the defendants' respective positions at trial is such that, in light of all of the other evidence in the case, the defendants were denied a fair trial. *Id.* at 582-83, 356 S.E.2d at 332. Thus, the focus is on whether the defendants have suffered prejudice, not on whether they contradict each other. *Id.* at 583, 356 S.E.2d at 332. No prejudice results where the State presents plenary evidence of the defendant's guilt, apart from the co-defendant's testimony, and where the defendant has the opportunity to cross-examine the co-defendant. *Id.*

In this case, defendant's contention regarding antagonistic defenses relates only to the death of Brittany James. Each defendant contended that it was the other who fired the shot from the 9mm handgun that killed Brittany. The State presented the testimony of several eyewitnesses on this issue. Troy Scott testified that defendant was rapid-firing what must have been an automatic weapon and was firing it aimlessly. Mistie Anderson testified that she thought defendant's gun was a 9mm, that it was flat (like a 9mm), not round on each side (like a revolver), and that it had a slide on the top (like a 9mm).

Earl Roy testified that defendant was shooting toward Brittany's trailer when defendant was firing in his direction. This was strong evidence to support a jury finding that defendant shot Brittany. Furthermore, defendant subjected his co-defendant, Burden, to rigorous cross-examination. Because the State presented plenary evidence of defendant's guilt, apart from his co-defendant's testimony, and defendant had the opportunity to cross-examine his co-defendant, we conclude that the antagonistic defenses in this case did not prejudice defendant.

Second, defendant contends the court's ruling denied him a fair trial because he was not allowed to introduce a statement made by Burden to Captain Larry Johnson of the Onslow County Sheriff's Department. The trial court found that the statement was made before Burden had been advised of his Miranda rights and was inadmissible. Johnson testified that Burden made the statement either while still in the attic at his home or thereafter in the police car. After Johnson spoke with Burden, he wrote the following in his report: "Suspect number 1 [Burden] advised that he had allegedly been fired upon by victim number 1 [Carlos Howard], so he retaliated by doing the same thus possibly firing a stray round into victim number 3's [Brittany's father's] mobile home at lot 4." Defendant contends the part of the statement beginning "thus possibly firing a stray round" was a statement against Burden's penal interest and was therefore admissible as an exception to the hearsay rule. He contends that had he and Burden been tried separately, the statement would have been admissible in defendant's trial.

Captain Johnson's testimony on *voir dire*, however, shows that the purported statement by Burden beginning "thus possibly firing a stray round" was in fact not a statement, but a conclusion drawn by Johnson. Johnson testified that Burden did state that he was fired on by Howard and that he returned fire. Johnson noted that the word "allegedly" was his word and was not said by Burden. Johnson testified that the part of the report beginning with "thus possibly firing a stray round" was a conclusion he drew based on the facts he knew, and that it was not a statement made by Burden. Based on this testimony, the trial court found that Burden did not make a statement concerning a stray bullet. The trial court's findings of fact following a *voir dire* hearing are binding on the appellate court when supported by competent evidence. *State v. Lane*, 334 N.C. 148, 154, 431 S.E.2d 7, 10 (1993). Accordingly, we must conclude there was no "statement" by Burden about a stray bullet which could have been admitted at

trial. Thus, defendant's argument that such a statement would have been admissible if he had been tried separately is without merit.

Defendant next contends that Burden's statement that Howard fired at Burden and that Burden returned fire was admissible to impeach Burden, who testified that he did not make such a statement to Johnson. We note that defendant also makes this argument with respect to the stray bullet "statement." However, as stated above, there was no such statement.

We agree that the trial court erred in not allowing defendant to impeach Burden with evidence of Burden's statement to Johnson. A statement taken in violation of a defendant's Miranda rights may nonetheless be used to impeach the defendant's credibility if (1) the statement was not involuntary, and (2) the defendant (i.e., Burden) testified at trial. *State v. Purdie*, 93 N.C. App. 269, 279, 377 S.E.2d 789, 795 (1989) (citing *Harris v. New York*, 401 U.S. 222, 224, 28 L. Ed. 2d 1, 4 (1971)). However, we believe such error was harmless. Burden's credibility at trial was weak at best. His testimony that he only fired one shot while the Howard group was in the street was contradicted by several witnesses. In addition, Burden testified about his history of criminal behavior, which included numerous acts of theft. The fact that his testimony was contrary to his statement to Captain Johnson rises to no more than harmless error. As we conclude the error was harmless, we likewise conclude as to defendant's severance argument that defendant's right to a fair trial was not prejudiced by the exclusion of this impeachment evidence.

II.

[2] Defendant's next contention is that the trial court erred in allowing the prosecutor to cross-examine defendant concerning 9mm shots that were fired at an apartment complex that defendant, Burden, and Bernard Jones drove past on their way from the pawn shop to the mobile home park. Defendant argues that Rule 608(b) of the Rules of Evidence does not permit cross-examination on this instance of misconduct and the prosecutor should not have been allowed to ask defendant about that incident. Defendant is correct that the act of shooting at an apartment complex is not probative of defendant's truthfulness or untruthfulness and was therefore not a proper subject for cross-examination under Rule 608(b). *See* N.C.G.S. § 8C-1, Rule 608 (1992). However, the prosecutor was not seeking to attack the credibility of defendant. Rather, he was attempting to elicit testimony

that defendant fired the 9mm gun at the apartment complex on the way to the mobile home park.

Under Rule 404(b) such cross-examination was proper. Rule 404(b) provides that evidence of other crimes, wrongs, or acts of the defendant may be admitted if the proponent's purpose is to show, *inter alia*, proof of the defendant's identity as the perpetrator. N.C.G.S. § 8C-1, Rule 404(b) (1992). Evidence that defendant was firing the gun in question shortly before the events at the mobile home park was admissible to prove defendant's identity as the person who fired the stray 9mm bullet that killed Brittany. Accordingly, the trial court properly allowed cross-examination on this point.

### III.

**[3]** Defendant next contends the trial court erred in denying his motion to dismiss on the ground of insufficient evidence in the case involving Brittany's death. The jury found defendant guilty of involuntary manslaughter in that case.

The guiding principles we must follow when considering a defendant's motion to dismiss are as follows:

> In ruling on a motion to dismiss for insufficiency of evidence, the evidence must be viewed in the light most favorable to the State, and the State must be afforded every reasonable inference arising from the evidence. The credibility of the witnesses and the weight to be given their testimony is for the jury to determine. The question for the court is whether there is substantial evidence of each element of the crime charged. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*State v. O'Rourke*, 114 N.C. App. 435, 441, 442 S.E.2d 137, 140 (1994).

Involuntary manslaughter is an unlawful killing proximately caused by either (1) an unlawful act not amounting to a felony or naturally dangerous to human life, or (2) a culpably negligent act or omission. *State v. Thomas*, 325 N.C. 583, 598, 386 S.E.2d 555, 563 (1989). Culpable negligence is defined as an act or omission which evidences a disregard for human rights and safety. *Id.* at 598, 386 S.E.2d at 564. The trial court instructed that defendant could be found guilty of involuntary manslaughter whether he acted alone or in concert with Burden.

Defendant contends the State's evidence was in conflict on the question of which defendant was firing the 9mm pistol and that the State did not show which defendant fired the shot that killed Brittany. Our Supreme Court recently addressed a similar case involving two defendants. In *State v. Reid*, 335 N.C. 647, 440 S.E.2d 776 (1994), the defendants shot two people in a club, killing one and injuring the other. Each defendant was firing a different type gun, and the State's evidence was in conflict as to which defendant fired the shot that injured the surviving victim and as to which gun fired that shot. Defendant Reid was found guilty of assault with a deadly weapon with intent to kill inflicting serious injury. His co-defendant, Adams, was also charged with that offense but was acquitted. The Court held that there was sufficient evidence to support a finding by the jury that it was Reid who shot the victim, and that there was also sufficient evidence to support a finding by the jury that it was Adams who shot the victim, and that Reid acted in concert with Adams. *Id.* at 655, 440 S.E.2d at 780.

Likewise, in the case at hand, there was sufficient evidence to support a finding by the jury that defendant was guilty of involuntary manslaughter either because (1) it was defendant who fired the 9mm gun, killing Brittany or (2) it was Burden who fired the 9mm gun, and defendant acted in concert with him. First, as discussed in section I. of this opinion, several witnesses testified that it was defendant who was firing the 9mm gun at the time Brittany was killed. One witness testified that defendant was firing aimlessly. Another testified that defendant fired in the direction of Brittany's trailer. There can be no doubt that such actions amount to a disregard for human rights and safety, thus constituting culpable negligence.

Second, there was sufficient evidence to support a finding that it was Burden who fired the 9mm gun and that defendant was acting in concert with Burden. Earl Roy testified that he was certain that Burden was firing an automatic pistol, and defendant testified that it was Burden who was firing the 9mm pistol. Bernard Jones, a cousin of both defendants, testified that at one point, Burden fired six or seven shots with the 9mm at Carlos Howard from the steps of the trailer.

There was also evidence that defendant was acting in concert with Burden. Under the doctrine of acting in concert, one may be found guilty of committing a crime if he is at the scene with another with whom he shares a common plan to commit the crime, although

the other person does all the acts necessary to effect commission of the crime. *State v. Blankenship*, 337 N.C. 543, 557-58, 447 S.E.2d 727, 736 (1994). Defendant contends, however, that there can be no common plan to commit a culpably negligent act. This argument was rejected in *State v. Robinson*, 83 N.C. App. 146, 149, 349 S.E.2d 317, 319 (1986). Here, defendant and Burden had a common plan to shoot at Howard and his group, as evidenced by the fact that the two came out of the trailer and began firing on the group. As stated above, firing repeated shots toward a group of people is a culpably negligent act, amplified since the Howard group was not armed.

In sum, we conclude there was sufficient evidence to support a finding that defendant was guilty of involuntary manslaughter. Thus, the trial court properly denied defendant's motion to dismiss.

## IV.

[4] Defendant's next contention is that the trial court erred in denying his motion to dismiss on the ground of insufficient evidence in the case involving the death of Carlos Howard. The jury found defendant guilty of voluntary manslaughter. Defendant argues that there was no evidence that he was involved in any way in this offense.

The trial court instructed the jury that it could find defendant guilty of second-degree murder or voluntary manslaughter in the death of Carlos Howard if defendant aided or abetted Burden in the commission of the crime. Under the doctrine of aiding and abetting, the defendant must have been present at the scene of the crime, either actually or constructively, with the intent to aid the perpetrator in the commission of the offense should his assistance become necessary, and such intent must have been communicated to the actual perpetrator. *State v. Amerson*, 316 N.C. 161, 166-67, 340 S.E.2d 98, 101 (1986). Such communication of intent to aid does not have to be shown by express words, but may be inferred from the defendant's actions and from his relation to the actual perpetrator. *Id.* at 167, 340 S.E.2d at 101. When the bystander is a friend of the perpetrator and knows that his presence will be viewed by the perpetrator as an encouragement and protection, the defendant's presence alone may be regarded as an encouragement. *Id.*

In the present case, defendant was actually present at the scene of the crime. A short time before Burden killed Howard, defendant actively joined Burden in firing toward the Howard group outside the trailer. Earl Roy testified that while defendant and Burden were firing

toward the group, defendant told Burden, "Shoot him, shoot him. I'll get you out of jail." In addition, defendant was a cousin and friend of Burden. From defendant's statement of encouragement, his actions, and his relationship with Burden, the jury could certainly infer his intent to aid and abet Burden in shooting Howard. Accordingly, we conclude there was sufficient evidence to support defendant's guilt by aiding and abetting.

Because defendant was convicted of voluntary manslaughter, we next address the question of whether there was evidence to support a finding that the actual perpetrator, Burden, committed voluntary manslaughter. (Interestingly, Burden was convicted of second-degree murder, not voluntary manslaughter. The inconsistency of the verdicts is discussed below in section IX.) We note that defendant makes no contention that there was insufficient evidence to support a finding that Burden committed voluntary manslaughter.

The jury was instructed that it could find Burden guilty of voluntary manslaughter if it found that Burden killed in the heat of passion upon adequate provocation, or if Burden killed in self-defense, defense of others or of habitation but used excessive force under the circumstances, or if Burden was the aggressor without murderous intent in starting the fight in which the killing took place. There was substantial evidence that Howard repeatedly cursed at, taunted, and persisted in provoking a response by defendants. He succeeded to his detriment. There was also evidence that Burden shot Howard as Howard approached him and that Burden was in fear for his life at that moment. Finally, there was evidence showing that throughout the encounter, Howard was unarmed. This evidence was sufficient to support a finding that Burden committed voluntary manslaughter.

We conclude that the trial court properly denied defendant's motion to dismiss.

V.

We next address defendant's contention that the court's instruction to the jury on aiding and abetting was error. Defendant contends that a defendant's mere presence at the scene is not enough and that the court misstated the law when it instructed: "When the bystander is a friend of the perpetrator and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as encouragement." This was a cor-

**STATE v. BURTON**

[119 N.C. App. 625 (1995)]

rect statement of the law. *See Amerson*, 316 N.C. at 167, 340 S.E.2d at 101. Accordingly, defendant's contention is without merit.

## VI.

Defendant's next contention is that the trial court gave an erroneous instruction on self-defense in the Brittany James case. As to this offense, the jury was instructed that it could find defendant guilty of second-degree murder, or of involuntary manslaughter, or not guilty. The jury found defendant guilty of involuntary manslaughter.

Self-defense is not a defense to the charge of involuntary manslaughter. *State v. Teel*, 65 N.C. App. 423, 424, 310 S.E.2d 31, 32 (1983). Because the jury found defendant not guilty of second-degree murder, the charge to which self-defense was applicable, any error in charging thereon could not have been prejudicial. *State v. Daniels*, 87 N.C. App. 287, 290, 360 S.E.2d 470, 471 (1987).

## VII.

[5] Defendant's next contention is that the trial court erred in its instructions on self-defense in the Brittany James case when it instructed that defendant would not be entitled to the benefit of self-defense if he was the aggressor with the intent to kill or inflict serious bodily harm upon Carlos Howard. Defendant contends there was no evidence to support a finding that he was the aggressor. Defendant failed to object to this instruction but has assigned plain error. For an instructional error to constitute plain error, the error must have had a probable impact on the jury's finding of guilt. *State v. Allen*, 339 N.C. 545, 555, 453 S.E.2d 150, 155-56 (1995).

In *State v. Haight*, 66 N.C. App. 104, 310 S.E.2d 795 (1984), this Court discussed the propriety of the aggressor instruction on facts similar to those of the present case. In *Haight*, the defendant, Peggy Haight, was the owner of a lounge. The victim, Winston McKenzie, while in the lounge became verbally abusive toward several other customers. Concerned that McKenzie might cause more trouble, Haight called a male friend to come and help her close the lounge early. After Haight closed up, McKenzie began to direct his invective at Haight, even though she was then holding a shotgun. McKenzie, though unarmed, referred to the gun as a "pea shooter" and told Haight, "That ain't shit. I'll take it and ram it up your ass." This pronouncement did not endear McKenzie to Haight, who started to swing the gun toward McKenzie. Unfortunately, it hit her friend on the leg. Her friend took the gun and pointed it at McKenzie, telling McKenzie

that they should all just go home. McKenzie told the man he didn't have the nerve to shoot him. The man then put the gun in the car. Haight, who was then in the car, grabbed the gun, stood with one foot on the ground, and shot McKenzie in the chest. This Court held that the evidence was sufficient to raise the issue of whether Haight was the aggressor and that the aggressor instruction was therefore proper. *Id.* at 108, 310 S.E.2d at 798.

Likewise, in the case at hand, the evidence supported the instruction. Carlos Howard exhibited the same moronic audacity as did McKenzie. Howard, unarmed, cursed and taunted defendant and Burden from outside their trailer. Defendant and Burden then came outside. The two began shooting, with defendant telling Burden, "Shoot him, shoot him. I'll get you out of jail." Far from being a plea for mercy, this evidence supports the aggressor instruction. Accordingly, we find no error, plain or otherwise.

## VIII.

Next, defendant contends the trial court erred in the Carlos Howard case, in which defendant aided and abetted Burden, in its concluding instructions to the jury by failing to refer to defendant's pleas of self-defense, defense of others, and defense of habitation. Because defendant made no objection to the charge when given the opportunity to do so, he may not assign error to these omissions from the charge. N.C.R. App. P. 10(b)(2) (1995); *State v. Hamilton*, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994).

Rule 10(c)(4) provides:

Assigning Plain Error. In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4) (1995). As defendant has failed to specifically and distinctly allege that the trial court's instruction amounted to plain error, defendant has waived any appellate review. *Hamilton*, 338 N.C. at 208, 449 S.E.2d at 411; N.C.R. App. 10(c)(4).

## IX.

[6] Defendant's next contention is that the trial court erred in not setting aside the verdict in the Carlos Howard case. His co-defendant,

Burden, having fired the fatal bullet, was found guilty of second-degree murder. Defendant, however, was found guilty of voluntary manslaughter as an aider and abettor. Defendant contends that because the verdicts were inconsistent and "legally impossible," the judgment against him must be reversed. On this point, defendant has also filed a motion for appropriate relief.

In *State v. Reid*, discussed in section III. of this opinion, our Supreme Court recently addressed the issue of inconsistent verdicts. In that case, the evidence was in conflict as to which of the two defendants fired the shot that injured the victim. The jury was instructed that it could find defendant Reid guilty of assault with a deadly weapon with intent to kill inflicting serious injury under the concerted action principle. Under that theory of the case, the jury would have found that Reid's co-defendant, Adams, was the actual perpetrator and that Reid acted in concert with him. The jury found Reid guilty of the offense but found Adams not guilty. Reid argued on appeal that his conviction could not stand because the jury could not have found him guilty on the concerted action principle yet found his co-defendant not guilty. The Supreme Court rejected Reid's argument. *Reid*, 335 N.C. at 657, 440 S.E.2d at 781.

The Court followed the reasoning set out in several United States Supreme Court cases. For example, in *Dunn v. United States*, 284 U.S. 390, 76 L. Ed. 356 (1932), the Court held that a criminal defendant convicted on one count could not attack that conviction because it was inconsistent with the jury's acquittal of the same defendant on another count. *Id.* at 393-94, 76 L. Ed. at 358-59. The Court stated:

> Consistency in the verdict is not necessary. . . . "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the [jurors] did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

*Id.* at 393, 76 L. Ed. at 358-59 (quoting *Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925)).

In *United States v. Powell*, 469 U.S. 57, 83 L. Ed. 2d 461 (1984), the United States Supreme Court noted that a criminal defendant is afforded protection against jury irrationality or error by the inde-

pendent review of the sufficiency of the evidence undertaken by the trial and appellate courts. *Id.* at 67, 83 L. Ed. 2d at 470. This review should be independent of the jury's determination that evidence on another count was insufficient. *Id.* The government must convince the jury with its proof, and must then satisfy the courts that given this proof, the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. *Id.*

We conclude that in light of these principles and our Supreme Court's decision in *Reid*, defendant's conviction should stand. We believe, as did the Court in *Reid*, *see* 335 N.C. at 660, 440 S.E.2d at 783, that the jury's verdict in this case may have been a demonstration of lenity for defendant. As the Court stated in *Reid*,

> A case such as this, where the evidence, even among the witnesses for each side, is contradictory and confusing, is a prime example of why we should not attempt to enter the jury's thought process to determine whether the jurors spoke their real conclusions in their [verdicts]. What we have done to protect defendant Reid from an irrational jury is determine if the evidence was sufficient to find defendant guilty . . . beyond a reasonable doubt.

*Id.* We have concluded above that there was sufficient evidence to support defendant's conviction of voluntary manslaughter. Defendant's conviction will not be reversed on the ground that there were inconsistent verdicts. His assignment of error on this point is overruled, and his motion for appropriate relief is denied.

X.

[7] Defendant's remaining arguments relate to his sentencing hearing. First, defendant contends the trial court erred in finding as an aggravating factor in the Brittany James case that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person. *See* N.C.G.S. § 15A-1340.4(a)(1)(g) (1988). The bullet that killed Brittany was fired from a 9mm semi-automatic handgun. Defendant contends that such a weapon would not normally be hazardous to more than one person. We find this position untenable.

In *State v. Carver*, 319 N.C. 665, 356 S.E.2d 349 (1987), our Supreme Court addressed this issue with respect to a semi-automatic rifle. The Court stated:

> In this case we believe it is evident that a great risk of death is created to more than one person when a .308M-1 rifle is fired several times into a crowd of several persons. Any reasonable person should know this and we can conclude the defendant created this risk knowingly. A semi-automatic rifle may be used normally to fire several bullets, in this case eight, in rapid succession. Several bullets fired in rapid succession are hazardous to the lives of more than one person; therefore we hold that the evidence in this case supports a finding of the aggravating factor that the defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person.

*Id.* at 667-68, 356 S.E.2d at 351.

In the case at hand, the gun was fired several times toward the Howard entourage. A firearms expert testified that a 9mm semi-automatic handgun will hold between approximately eight and sixteen bullets, depending on the manufacturer, and will fire the bullets as fast as the shooter can pull the trigger. Based on the reasoning in *Carver*, we conclude that the trial court did not err in finding the aggravating factor here.

## XI.

[8] Defendant's final contention is that the trial court erred in not finding as a mitigating factor that defendant was a minor at the time of the offense in that he was seventeen years old. Defendant apparently contends that because of his age, he should be deemed immature. Defendant cites the statutory mitigating factor dealing with immaturity, N.C.G.S. § 1340.4(a)(2)(e) (1988). That factor provides: "The defendant's immaturity or his limited mental capacity at the time of commission of the offense significantly reduced his culpability for the offense." However, a defendant's age alone is insufficient to support this factor. *State v. Moore*, 317 N.C. 275, 280, 345 S.E.2d 217, 221 (1986) (defendant there was also seventeen at time of offense). Defendant makes no contention, apart from the fact of his age, that he was otherwise immature at the time of the offense. The trial judge did not err.

Defendant Burden's Appeal

I.

**[9]** Defendant Burden's first contention is that the trial court erred in its instruction on self-defense and defense of others in the Carlos Howard case. Defendant failed to object to the instruction at trial, but has assigned plain error to that part of the charge which states that defendant would be excused of second-degree murder if it appeared to him and he believed it to be necessary to *kill* Carlos Howard in order to save himself or others from death or great bodily harm. To support his position, defendant cites *State v. Richardson*, 112 N.C. App. 252, 435 S.E.2d 84, *temporary stay allowed*, 335 N.C. 179, 436 S.E.2d 389, *disc. review and supersedeas allowed*, 335 N.C. 241, 439 S.E.2d 159 (1993).

In *Richardson*, this Court held that this instruction is improper as it relates to second-degree murder. *Id.* at 258-59, 435 S.E.2d at 87-88. The Court reasoned:

Submitting to the jury the first element of perfect self-defense as quoted, *i.e.*, that "it appeared to the defendant and he believed it to be necessary to *kill* the deceased in order to save himself from death or great bodily harm," reads into this defense an element (intent to kill) that is not part of second degree murder. That submission also renders impermissibly easier the State's burden of disproving the first element or the second element [i.e., the reasonableness of the defendant's belief] of perfect self-defense since the circumstances that would justify the reasonableness of an intent to kill in self-defense would be graver than those justifying the reasonableness of an intentional killing, as that phrase is defined. [The Court had earlier stated that an "intentional killing" in this context refers not to the presence of a specific intent to kill, but rather to the fact that the act which resulted in death was intentionally committed and was an act of assault which in itself amounted to a felony or was likely to cause death or great bodily injury].

*Id.* at 258, 435 S.E.2d at 87. This Court concluded that the instruction on self-defense, as it relates to second-degree murder, should be phrased in terms of a defendant's belief that it was " 'necessary to shoot [or use deadly force against] the deceased in order to save himself from death or great bodily harm.' " *Id.* at 259, 435 S.E.2d at 88. The Court stated that it was significant that in the case before it, the

trial court did not instruct on first-degree murder. *Id.* at 258, 435 S.E.2d at 88. The Court noted, however, that a case was then pending before the Supreme Court concerning this issue as to a trial where first-degree murder, second-degree murder, and voluntary manslaughter were submitted. That case, *State v. Watson*, 338 N.C. 168, 449 S.E.2d 694, *temporary stay and reconsideration denied*, 338 N.C. 523, 457 S.E.2d 302 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 569 (1995), has since been decided.

In *Watson*, the Supreme Court held that instructing the jury in terms of the need to use deadly force, rather than to kill, could be appropriate if the evidence supported such an instruction. *Id.* at 182-83, 449 S.E.2d at 703. If the evidence was that the defendant intended to use deadly force to disable the victim but not to kill him, it would be appropriate to instruct in terms of the need to use deadly force, rather than the need to kill, and in terms of whether the amount of deadly force used was excessive under the circumstances. *Id.* at 183, 449 S.E.2d at 703. However, if the evidence showed an intent to kill rather than an intent to use deadly force, the trial court should instruct the jury in terms of the need to kill. *Id.*

We believe that the rule in *Watson* modifies this Court's holding in *Richardson*, even though Watson involved first and second-degree murder, and not just second-degree murder. Since second-degree murder was an option for the jury in *Watson*, we believe that *Watson* controls even in cases, such as the present case, where second-degree murder is the only murder instruction given.

In *Watson*, all the evidence showed that the defendant intended to kill the victim. *Id.* Thus, the Court held that the trial court properly charged the jury in terms of the defendant's belief in a need to kill. Likewise, in the present case, all the evidence shows an intent to kill Carlos. Howard was only two to three feet away when defendant shot him. Clearly, a shot to the neck from three feet at one who is unarmed gives rise to a compelling belief that defendant shot to kill, not disable. Accordingly, the trial court properly instructed on defendant's belief in the need to kill Howard.

II.

Defendant's next contention is that the trial court erred in denying his motion to dismiss on the ground of insufficient evidence in the Brittany James case. We disagree, as there was sufficient evidence to support defendant's conviction either on the theory that defendant

fired the 9mm gun that killed Brittany or on the theory that defendant acted in concert with Burton, who fired the 9mm gun. The evidence on these points has been set out above and need not be restated here.

### III.

Defendant's final contention is that the trial court erred in not setting aside the verdict against him in the Carlos Howard case, because the two verdicts in that case were inconsistent. As stated above in section IX., this contention will not fly.

For the reasons stated, we find that defendants received a fair trial free from prejudicial error.

No error; motion for appropriate relief denied.

Judges GREENE and MARTIN, Mark D. concur.