LAURA GENE GALLOWAY, BY HER NEXT FRIEND DANIEL J. PARKS v. BENJAMIN J. LAWRENCE, JR.

AND

LOIS GALLOWAY v. BENJAMIN J. LAWRENCE, JR.

(Filed 14 January, 1966.)

**1. Physicians and Surgeons § 11—**

The fact that a physician or surgeon possesses the requisite professional knowledge and skill is not alone sufficient to preclude liability to his patient, since he may be held liable for injuries resulting from his failure to exercise reasonable diligence in the application of his knowledge and skill to the patient's case, or for his failure to give the patient such attention as the case requires.

**2. Trial § 10— Remark of the court in the presence of the jury held prejudicial as expression of opinion on evidence.**

In this action for malpractice, defendant's own evidence was to the effect that defendant would have been remiss if he had failed to call at the hospital to see his patient after having been advised by telephone of a serious turn for the worse in her condition. The sole evidence that defendant made such call was his own statement. Upon the interrogation of another witness as to whether the failure to make such visit would constitute neglect, the court stated that the evidence with reference to the matter was that defendant went to the hospital, that there was no evidence he did not go there, and that the burden of proving neglect was on plaintiff. *Held:* The occurrence amounted to an expression of opinion by the court on the evidence, and constituted prejudicial error.

**3. Same—**

Defendant surgeon, in a malpractice suit, was offered as an expert witness. The court, in the presence of the jury, stated that the court found defendant to be an expert physician in surgery, qualifying the witness to testify. *Held:* The remark of the court in the presence of the jury constituted prejudicial error.

**4. Same—**

The statutory proscription against the trial judge expressing an opinion upon the evidence, G.S. 1-180, applies not only to the charge alone, but prohibits the trial judge from asking questions or making comments at any time during the trial which amount to an expression of opinion to what has or has not been shown by the testimony of a witness.

APPEALS by plaintiffs from *Johnston, J.,* 22 March 1965 Session of SURRY.

These are two cases which were consolidated for trial. In the first, Laura Gene Galloway, a minor child, sues the defendant, a physician and surgeon, for damages which she alleges she sustained as a result of the negligence of the defendant in treating her as his patient. In the second, Lois Galloway, mother of Laura, sues the defendant for loss of her daughter's services and for expenses in-

curred and to be incurred by her for medical treatment of Laura, alleged to be the result of the defendant's negligence in his treatment of the child.

The cases were here upon the former appeal of the defendant from an order striking a further defense from his answer to each complaint. That order was affirmed. *Galloway v. Lawrence,* 263 N.C. 433, 139 S.E. 2d 761.

The cases then came on for trial and three issues were submitted to the jury. The first was, "Was the plaintiff, Laura Gene Galloway, injured by the negligence of the defendant, Benjamin J. Lawrence, Jr., as alleged in the complaint?" The other two issues related to the amount of damages each plaintiff was entitled to recover from the defendant. The jury answered the first issue in favor of the defendant and, therefore, did not answer the other two issues.

From a judgment in accordance with the verdict the plaintiffs have appealed, making the same assignments of error. These relate to the sustaining of objections by the defendant to various questions propounded by the plaintiffs to witnesses, the overruling of the plaintiffs' objections to various questions, both hypothetical and otherwise, propounded by the defendant to witnesses, the refusal to declare a mistrial, the making of certain comments by the court in the presence of the jury, the inclusion of certain instructions in the charge and the way in which the court, in its charge to the jury, stated the contentions of the parties, reviewed the evidence and explained the law applicable thereto.

The complaint of Laura Galloway alleges in substance: On 8 February 1962, she, being then four years of age, was struck by an automobile and sustained thereby a simple fracture of her left leg above the knee and certain bruises and abrasions which were not of a serious nature. She was admitted to the hospital for treatment of her injuries by the defendant, who was and is practicing as a general physician and surgeon. She was otherwise in good health and had sustained no injury to her right leg. The defendant treated her fractured left leg by applying Bryant's traction to both legs. The defendant was negligent in that he failed to use proper and accepted methods in his treatment of the child's injury, failed to give her proper attention after putting her in traction, failed to use proper methods of treatment to arrest conditions which developed from the use of traction, and was otherwise negligent in treating and attending her. Such negligence of the defendant was the proximate cause of serious injuries to the child, including permanent and serious disabilities in both legs. The evidence shows the child's right leg has now been amputated below the knee.

The complaint of the mother contains substantially the same

allegations with reference to negligence by the defendant and resulting injuries to the child.

In his answers the defendant denies any negligence by him in his treatment and care of the little girl.

The evidence is voluminous, including the testimony of numerous expert witnesses for each party. It is not necessary for the purposes of this appeal that it be summarized.

*White, Crumpler, Powell, Pfefferkorn and Green for plaintiff appellants.*

*Woltz & Faw; Womble, Carlyle, Sandridge & Rice by I. E. Carlyle and Grady Barnhill, Jr., for defendant appellee.*

LAKE, J. The duty which a physician or surgeon owes his patient is determined by the contract by which his services are engaged. *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356. Ordinarily, he is not an insurer of the success of his treatment of or operation upon the patient and, in the absence of proof of his negligence in the treatment of the patient, or of his failure to possess that degree of professional knowledge and skill ordinarily had by those who practice that branch of the medical art and science which he holds himself out to practice, he is not liable in damages even though the patient does not survive the treatment or emerges from it in worse condition than before. *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762; *Jackson v. Sanitarium,* 234 N.C. 222, 67 S.E. 2d 57; *Wilson v. Hospital,* 232 N.C. 362, 61 S.E. 2d 102; *Hardy v. Dahl,* 210 N.C. 530, 187 S.E. 788; *Nash v. Royster, supra.*

In *Hunt v. Bradshaw, supra,* this Court, speaking through Higgins, J., said:

"A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. [Authorities cited.] If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

Thus, it is not enough to absolve a physician or surgeon from liability that he possess the requisite professional knowledge and skill. He must exercise reasonable diligence in the application of

that knowledge and skill to the particular patient's case and give to that patient such attention as his case requires from time to time. *Wilson v. Hospital, supra; Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 553; *Nash v. Royster, supra.* In the case last cited, Stacy, C.J., said, for the Court:

> "As a general rule, in the absence of any special agreement limiting the service, or reasonable notice to the patient, when a surgeon is employed to perform an operation, he must not only use reasonable and ordinary care, skill and diligence in its performance, but, in the subsequent treatment of the case, he must also give, or see that the patient is given, such attention as the necessity of the case demands."

The plaintiffs allege that in the treatment of this little girl the defendant did not use a proper and accepted method of treating such a fracture in so small a child and that, having placed her in Bryant's traction, he failed to give her proper care and attention, especially after he was informed by the nurses in charge that alarming symptoms, indicating serious complications, had appeared.

There was conflicting expert testimony as to whether the treatment used by the defendant in the case of this child was an accepted and approved method of treating such fracture.

The plaintiffs called as their witnesses the nurse, who, upon the night of 11-12 February 1962, was on duty and in charge of the hall of the hospital upon which the child's room was located, and the supervisor of nurses then on duty and in charge of nursing service throughout the hospital. They testified that at approximately 2 a.m. on 12 February 1962, at which time the child had been in traction four days, the hall nurse discovered that the child's feet were cool, discolored and swollen, these being indications of serious circulatory complications in a patient in Bryant's traction. Following a consultation between the hall nurse and the supervisor, the latter telephoned the defendant and reported these circumstances to him. The defendant, in the telephone conversation, instructed the supervisor to let the child's legs down and to start certain treatment. Neither the supervisor nor the hall nurse saw or had any further communication with the defendant during the remainder of the night. During the remainder of the night, the supervisor's duties required her to be in various places throughout the hospital and the hall nurse, with a number of patients under her care, had her station at some distance down the hall from this child's room and around a corner so that she could not see the door of the room. The child's room was at the head of a stairway, leading to the lower floor and thence to the emergency entrance to the hospital. The defendant testified

that, after receiving the telephone call from the nurses, he went to the hospital, entered by the emergency entrance, went up the stairway and into the child's room, observed what had been done pursuant to his instructions given over the telephone, determined that there was nothing else to be done for the present but to await developments and then left the hospital without seeing either the hall nurse or the supervisor since he had nothing further to tell them. He saw no one else in the hospital, which is a relatively small one. The patient, being a four year old child, would not be a source of either corroboration or contradiction.

Dr. Howard H. Bradshaw, called as a witness by the defendant and qualified as an expert, testified, "I believe the child had standard treatment." This was in response to a hypothetical question by defendant's counsel, which question included, as one of the hypotheses, "that immediately after the telephone conversation Dr. Lawrence went to the Northern Hospital of Surry County, entered the hospital through the emergency room door and went to Room 236; that he entered the child's room and began examining the child," and decided upon a certain course of action. Upon cross-examination Dr. Bradshaw stated, "My opinion certainly would not have been the same if that visit had not been made."

Thus, by the defendant's own evidence, it is apparent that whether the defendant did or did not go to the hospital and see the child, after the telephone conversation with the nurses, was a material element in determining whether or not he gave to the child the attention and care which it was his duty to give her as her physician.

Dr. Seth M. Beal, also called as a witness by the defendant and also qualified as an expert, stated in response to the same hypothetical question put to Dr. Bradshaw that he also was of the opinion that the defendant "was correct in his procedures all the way through." Upon cross-examination the plaintiffs then asked Dr. Beal: "And, if no visit at all had been made to the hospital by the doctor in response to this call, that would very definitely have affected your opinion, wouldn't it?" Objection having been interposed to the question, the court entered into a discussion with counsel in the presence of the jury and, in the course of that discussion, stated: "Well, of course, now, the evidence with reference to the doctor going to the hospital is that he went there. * * * There is no evidence that he did not go there, and the burden of proof is on you."

The only evidence upon this point, other than the defendant's testimony that he did go to the child's room following the telephone call from the nurses, is that he did not communicate with either of them or make any effort to do so. Whether he did or did not go to

the hospital on this occasion is a question for the jury to determine in the light of all of this evidence. It was error for the court to express an opinion upon that matter in the presence of the jury.

The defendant testified as a witness in his own behalf. His counsel tendered him "as a medical expert." Plaintiffs' counsel stated that he did not wish to ask the defendant any questions; that is, he did not wish to question the defendant's qualifications to express opinions as an expert witness. The court, in the presence of the jury, said: "Let the record show that the Court finds as a fact that Dr. Lawrence is a medical expert, to wit: an expert physician in surgery."

While the plaintiffs in their complaints do not allege the defendant is lacking in professional knowledge and ability, and while their counsel disclaimed any desire to question him upon his qualifications to testify as an expert witness, we think that the court inadvertently erred in making, in the presence of the jury, a statement that the court found as a fact that the defendant is "an expert physician in surgery." The ruling should have been put into the record in the absence of the jury for it was an expression of opinion by the court with reference to the professional qualifications of the defendant. It might well have affected the jury in reaching its decision that the child was not injured by the negligence of the defendant. There was no error in permitting the defendant to testify, as an expert witness, for there was ample evidence to support the finding of his qualifications as such and his being a party does not disqualify him. *Dickinson v. Inhabitants of Fitchburg*, 79 Mass. 546; *Fetzer v. Clinic*, 48 S.D. 308, 204 N.W. 364, 39 A.L.R. 1423; Jones on Evidence, 4th Ed., §§ 378, 730. The court's finding should not, however, have been stated in the presence of the jury. Moore, J., speaking for the Court, said, in *Upchurch v. Funeral Home*, 263 N.C. 560, 140 S.E. 2d 17, "The slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial."

G.S. 1-180 provides: "No judge, in giving a charge to the petit jury, either in a civil or criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury, but he shall declare and explain the law arising on the evidence given in the case."

We have said many times that this statute does not apply to the charge alone, but prohibits a trial judge from asking questions or making comments at any time during the trial which amount to an expression of opinion as to what has or has not been shown by

the testimony of a witness. *Upchurch v. Funeral Home, supra; Greer v. Whittington,* 251 N.C. 630, 111 S.E. 2d 912; *In Re Will of Holcomb,* 244 N.C. 391, 93 S.E. 2d 454; *Hyder v. Battery Co., Inc.,* 242 N.C. 553, 89 S.E. 2d 124; *In Re Will of Bartlett,* 235 N.C. 489, 70 S.E. 2d 482; See also: McIntosh, N. C. Practice and Procedure, 2d Ed., § 1514; Strong, N. C. Index, Trial, § 10.

The above comments by the able and learned trial judge were inadvertently made in the presence of the jury in the course of discussions with counsel concerning the admissibility of evidence. However, they dealt with the very questions which the jury was called upon to decide and were clearly prejudicial to the plaintiffs. The professional ability and skill of the defendant and whether or not he visited his patient following the telephone call from the nurses are questions for the jury, not for this Court or for the judge presiding at the trial. We express no opinion as to these matters and the trial judge is forbidden to do so by the statute. Since there must be a new trial because of these inadvertent departures from the sound rule declared by this statute, it is not necessary for us to discuss the other assignments of error since none of them may arise on the new trial of the actions.

New trial.