**SHERROD v. NASH GENERAL HOSPITAL, INC.**

[126 N.C. App. 755 (1997)]

BETTIE B. SHERROD, Administratrix of the Estate of SYLVIA BIRTH, Deceased, Plaintiff v. NASH GENERAL HOSPITAL, INC., and KENNETH C. THOMPSON, JR., Defendants

No. COA96-1167

(Filed 15 July 1997)

**1. Appeal and Error § 206 (NCI4th)— wrongful death action—judgment—tolling of time to appeal—Rule 59 motion**

In a wrongful death action, plaintiff's appeal was timely filed where plaintiff's notice of appeal from judgment was given more than thirty (30) days after entry of judgment but within thirty (30) days after the trial court denied plaintiff's second Rule 59 motion for a new trial. Plaintiff's second Rule 59 motion asserted substantially different bases than her initial motion; therefore, plaintiff's thirty (30) day time period for appeal was tolled by the filing of her second Rule 59 motion.

**Am Jur 2d, Appellate Review §§ 285 et seq., 292 et seq.**

**Tolling of time for filing notice of appeal in civil action in federal court under Rule 4(a)(4) of Federal Rules of Appellate Procedure. 74 ALR Fed. 516.**

**2. Trial § 169 (NCI4th)— defendant as expert witness—qualification in jury's presence—no error as to hospital**

It was not error with respect to defendant hospital for the trial court to qualify defendant psychiatrist as an expert witness in the presence of the jury where the psychiatrist was testifying to the standard of care required by others in his expertise, he did not express an opinion as to defendant hospital's standard of care or whether it was met by the hospital staff, the jury was instructed on negligence based on conduct of the hospital's nurses, and the jury was asked to determine the negligence of both defendants as two separate issues.

**Am Jur 2d, Trial §§ 299 et seq.**

**3. Evidence and Witnesses § 2049 (NCI4th)— wrongful death action—redacted portion of letter—lay opinion on legal liability**

The trial court did not err in redacting a portion of a letter from the associate clinical director at Cherry Hospital to his

SHERROD v. NASH GENERAL HOSPITAL, INC.

[126 N.C. App. 755 (1997)]

superior implying that defendant physician and defendant hospital had prescribed too many and/or the wrong medications to decedent prior to her admission to Cherry Hospital where the court found that the redacted statement was not relevant because it was a legal opinion concerning potential liability, and the statement would have been cumulative because there was ample evidence directly stating that defendants had failed to meet the applicable standard of care.

**Am Jur 2d, Evidence §§ 1276 et seq.**

**Admissibility of parol evidence to show whether guaranty of corporation's obligation was signed in officer's representative or individual capacity. 70 ALR3d 1276.**

**4. Evidence and Witnesses § 2078 (NCI4th)— wrongful death action—lay witness—testimony of cause of death excluded**

It was not error for the trial court to exclude testimony from a lay witness, a nurse not offered by plaintiff as an expert witness, about whether the deceased showed symptoms of delirium or whether she was given too much medication while she was a patient at defendant hospital.

**Am Jur 2d, Evidence §§ 1051, 1052.**

**5. Trial § 169 (NCI4th)— defendant as expert witness—qualification in jury's presence—absence of prejudice**

The trial court's finding in the presence of the jury that defendant physician, who testified in his own behalf, was an expert in the field of general psychiatry was not prejudicial error as to such defendant where he testified without objection as to his background, training and experience in the field of psychiatry. (Concurring in part and dissenting in part opinion of Judge Walker concurred in by Judge John.)

**Am Jur 2d, Trial §§ 299 et seq.**

Judge WALKER concurring in part and dissenting in part.

Judge JOHN concurs with Judge Walker.

Appeal by plaintiff from judgment filed 7 December 1995 by Judge G.K. Butterfield, Jr., in Nash County Superior Court. Heard in the Court of Appeals 14 May 1997.

**SHERROD v. NASH GENERAL HOSPITAL, INC.**

[126 N.C. App. 755 (1997)]

*Leland Q. Towns, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by John D. Madden and Christopher G. Smith, for defendant-appellee Nash General Hospital, Inc.*

*Baker, Jenkins, Jones & Daly, P.A., by Kevin N. Lewis and Ronald G. Baker, for defendant-appellee Kenneth C. Thompson, Jr.*

GREENE, Judge.

Bettie B. Sherrod (plaintiff), administratrix of the estate of Sylvia Birth (deceased), appeals a jury verdict that the deceased's death was not caused by the negligence of either Nash General Hospital (NGH) or Kenneth C. Thompson, Jr. (Thompson) (collectively defendants), and a judgment entering the verdict in favor of defendants. Plaintiff also appeals the denial of her Rule 59 motion for a new trial.

Thompson had been the deceased's physician for approximately twenty years and recommended that the deceased be admitted to NGH, where she was admitted on 30 August 1990, because she had not been sleeping or eating well and had a history of mental illness. Prior to her admission the deceased was taking numerous medications and as a patient at NGH was given more medications. The deceased was at NGH from 30 August 1990 until 15 September 1990, during which time her physical and mental condition worsened.

On 15 September the deceased was transferred to Cherry Hospital (Cherry), where Dr. Murthy (Murthy), associate clinical director at Cherry, diagnosed the deceased with toxic-psychosis, a psychosis induced by a toxic material, which can include medication. Based on his diagnosis, Murthy withheld almost all medications from the deceased. The deceased was found dead at Cherry the following morning on 16 September 1990. A letter written on 14 November 1990 by Murthy to Dr. Leo Vocalan, clinical director at Cherry, states in pertinent part that:

> Cause of death according to the Autopsy Report was Imipramine Poisoning. It is possible that this patient might have developed anticholinergic crisis since she was on multiple psychoactive medications including Imipramine, Haldol, Mellaril, and also Valium prior to her admission to Cherry Hospital.

SHERROD v. NASH GENERAL HOSPITAL, INC.

[126 N.C. App. 755 (1997)]

> A review of our records reveal that patient did not receive any kind of psychotropic medications and did receive an appropriate level of care at our institution. *I am concerned about these kinds of patient referrals because had we continued the same medications she was on, it would have put us in jeopardy.*

Over plaintiff's objection, the trial court redacted that portion shown above in italics, finding that the sentence "seems to border on some type of legal opinion that a staff member is giving to his superior concerning potential liability" and is "not relevant to the matter that's under review in this case."

Dr. Clark (Clark), a forensic pathologist, concluded that based upon the elevated levels of drugs in her body, the deceased died from multiple drug overdoses. Clark classified the deceased's death as a suicide because the drug concentrations found in her body "were elevated beyond what she could reasonably have expected to get from taking the drugs in the amounts that were prescribed to her while she was an inpatient in a hospital." According to Clark, the overdose was acute, meaning it happened over a short period of time, and it was "close to impossible" that the overdose resulted from an accumulation of drugs over a period of time.

Shonette Grantham (Grantham), a Nurse Supervisor I at Cherry, stated that the deceased received only two injections of Ativan while at Cherry and no other medications were given to her. Grantham is trained to recognize the side effects of certain medications, in particular the side effects of antipsychotic and antidepressant drugs. When asked if the deceased's symptoms she observed on 15 September 1990 were consistent with delirium, defense counsel's objection was sustained because "[a]t this point she's still a lay witness." Grantham was not allowed to state whether she thought the deceased was given too much medication at NGH. Plaintiff made an offer of proof, at which time Grantham stated that the deceased received "too much" medication at NGH and her symptoms "could be the same" as those consistent with a "drug-induced delirium."

Dr. Morgan (Morgan), an expert in psychiatry and forensic psychiatry, stated that Thompson "fell below" the "generally accepted standards of practice for psychiatrists in Rocky Mount, North Carolina, and similar communities." Morgan also testified that the deceased's records indicate that the nurses at NGH "failed to provide the applicable standard of care required by law," and such conduct "contributed" to the deceased's death. Morgan testified that NGH also

violated the generally accepted standards of practice for hospitals. William Sawyer, an expert in pharmacotherapy believed that the deceased died from a drug intoxication and that such intoxication occurred over a period of time.

Carolyn Billings and Nancy Casey, experts in psychiatric nursing, testified that the NGH nurses treating the deceased met or exceeded the standard of care as it applies to nursing. Dr. Seymour Halleck and Dr. Joseph Weiss, experts in psychiatry, stated that Thompson's care of the deceased complied with the prevailing standards of care.

Over plaintiff's objection, Thompson was recognized as an expert in the field of psychiatry. Before the jury, the trial court stated, "I find that the witness is an expert in the field of general psychiatry. He will be permitted to testify as to such matters touching upon his expertise." Thompson stated that his treatment of the deceased was in accordance with generally accepted standards of practice for board certified psychiatrists in every respect, including the type and dosage of medication given to the deceased.

After the jury returned the verdict for defendants and was excused, plaintiff on 6 December 1995 made oral motions for judgment notwithstanding the verdict and, in the alternative, for the verdict to be set aside "as contrary to the weight of the evidence and the law" and for a new trial. The trial court denied the motions. On 7 December 1995 the trial court entered and filed the judgment on the jury's verdict. On 15 December 1995 plaintiff filed a written motion for a new trial pursuant to Rule 59 based on: (1) the jury disregarded the instructions by the court; (2) the verdict was contrary to the law and the weight of the evidence; (3) errors of law occurring at trial denied plaintiff a fair trial; and (4) juror misconduct.

The post-verdict written motions were dismissed on 19 March 1995 for the reason that "they are post-judgment motions covering the same matters which were the subject of a verbal motion by plaintiff's counsel at the close of the trial." On 27 March 1995 plaintiff filed a notice of appeal from the verdict and judgment and the dismissal of her post-trial motions. Thereafter, on 15 and 18 April 1995, defendants moved that plaintiff's appeal be dismissed for failure to timely file a notice of appeal pursuant to Rule 3 of the North Carolina Rules of Appellate Procedure. The trial court determined that plaintiff's written post-trial motions and the notice of appeal were timely filed and denied defendants' motions to dismiss plaintiff's appeal.

SHERROD v. NASH GENERAL HOSPITAL, INC.

[126 N.C. App. 755 (1997)]

The issues are whether (I) plaintiff timely filed the notice of appeal; (II) it was reversible error to recognize Thompson before the jury as an expert in the field of psychiatry; (III) the trial court erred in redacting a portion of Murthy's letter to Vocalan; and (IV) the trial court erred in precluding the nurse from testifying that she observed certain symptoms in the deceased.

I

[1] Rule 3 of the North Carolina Rules of Appellate Procedure provides that an appeal "from a judgment or order in a civil action . . . must be taken within 30 days after its entry." N.C. R. App. P. 3(c) (1997). The time for filing a notice of appeal is tolled by a timely motion filed by any party under Rule 50(b) for judgment notwithstanding the verdict "whether or not with conditional grant or denial of new trial," or a motion under Rule 59 to alter or amend a judgment or for a new trial. N.C. R. App. P. 3(c)(1), (3), (4). "[T]he full time for appeal commences to run and is to be computed from the entry of an order upon" any of these motions. N.C. R. App. P. 3(c).

In this case the notice of appeal from the judgment was given more than thirty days after its entry. The notice, however, was given within thirty days after denial of the plaintiff's second Rule 59 motion and thus the thirty day requirement was tolled. In so holding we reject the argument of the defendant that the second Rule 59 motion cannot extend the thirty days required for giving notice of appeal. When a subsequent Rule 59 motion is served asserting a basis different from that asserted in an earlier Rule 59 motion, the movant is entitled to the benefit of the tolling rule. It is only when the two motions assert the same basis in support of the different motions that the movant is prevented from benefitting from the tolling provision of Rule 3(c). *See Middleton v. Middleton,* 98 N.C. App. 217, 221, 390 S.E.2d 453, 455, *disc. rev. denied,* 327 N.C. 637, 399 S.E.2d 123 (1990). In this case the bases asserted in the second Rule 59 motion are substantially different from those asserted in the first oral motion. The plaintiff's notice of appeal was thus timely filed.

II

*Thompson*

Plaintiff argues that it was prejudicial error for the trial court to declare in open court in front of the jury that Thompson was an expert in the field of general psychiatry since such declaration was an "expression of an opinion on the credibility of a party to a lawsuit."

Rule 51(a) "prohibits the trial judge from expressing an opinion on the weight to be given to particular evidence." *Rannbury-Kobee Corp. v. Machine Co.*, 49 N.C. App. 413, 415, 271 S.E.2d 554, 556 (1980); *see* N.C.G.S. 1A-1, Rule 51(a) (1990).

> The slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial.

*Galloway v. Lawrence*, 266 N.C. 245, 250, 145 S.E.2d 861, 866 (1966) (quoting *Upchurch v. Funeral Home*, 263 N.C. 560, 567, 140 S.E.2d 17, 22 (1965)). When the ultimate issue in the case is controlled by whether the defendant met a specific standard of competence in performing a task, it is improper for the trial court to declare in front of the jury that the defendant is accepted as an expert in his field of expertise because such qualification is "an expression of opinion by the court with reference to the professional qualifications of the defendant." *Galloway*, 266 N.C. at 250, 145 S.E.2d at 866; *accord Rannbury-Kobee Corp.*, 49 N.C. App. at 415, 271 S.E.2d at 556 (was improper to qualify president of defendant company as expert in field of machine design and manufacture when ultimate issue was whether defects existed in design and manufacture of a wrapping machine). The proper procedure in this circumstance requires that the trial court qualify the party witness as an expert outside the presence of the jury. *Galloway*, 266 N.C. at 250, 145 S.E.2d at 866.

In this case the ultimate question to be decided by the jury was whether Thompson was negligent, i.e., whether his care of the deceased met the requisite standard of care in the profession. The trial court's acceptance, in the presence of the jury, of Thompson as an expert in general psychiatry "might well have affected the jury in reaching its decision that the [deceased] was not injured by the negligence of the defendant." *Galloway*, 266 N.C. at 250, 145 S.E.2d at 866. Therefore, because the trial court improperly expressed an opinion to the jury concerning the weight to be given Thompson's testimony, plaintiff is entitled to a new trial as to Thompson's negligence. *See id.* at 251, 145 S.E.2d at 866; *Rannbury-Kobee*, 49 N.C. App. at 416, 271 S.E.2d at 566.

### NGH

[2] Thompson was not an employee or agent of NGH and only testified to the standard of care required by others in his expertise, gen-

eral psychiatry, and did not express an opinion as to NGH's standard of care or whether it was met by its staff. Furthermore, the jury was instructed that whether NGH was negligent was based upon the conduct of its nurses, whereas whether Thompson was negligent was based upon his own treatment of the deceased. Finally, the jury was asked to determine the negligence of Thompson and NGH as two separate issues. Under these circumstances qualifying Thompson as an expert in the presence of the jury was not error with respect to NGH.

### III

[3] Because we have determined that plaintiff is entitled to a new trial with respect to Thompson, we will address the remaining assignments of error as they pertain to NGH only.

Plaintiff argues that it was error to redact that portion of the letter in which Murthy implied that Thompson and NGH were liable for their treatment of the deceased.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). A trial court's ruling on whether evidence is relevant is "technically . . . not discretionary and therefore [is] not reviewed under the abuse of discretion standard." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *dismissal allowed, disc. rev. denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied, Wallace v. North Carolina*, 506 U.S. ——, 121 L. Ed. 2d 241 (1992). Such rulings, however, "are given great deference on appeal." *Id.*

The trial court found that the redacted sentence was not relevant because it was "some type of legal opinion that a staff member is giving to his superior concerning potential liability." Although one reading of the statement may imply that the deceased had been prescribed too many and/or the wrong medications prior to being admitted to Cherry, the redacting of the questioned portion of the letter does not constitute error. In any event, there was ample evidence directly stating that NGH and Thompson had failed to meet the applicable standard of care and the redacted statement, even if admissible, would merely have been cumulative. *See Bowden v. Bell*, 116 N.C. App. 64, 69, 446 S.E.2d 816, 820 (1994) (even assuming it was error to exclude the evidence, such error was not prejudicial as there was other evidence stating the same proposition).

SHERROD v. NASH GENERAL HOSPITAL, INC.

[126 N.C. App. 755 (1997)]

IV

**[4]** Plaintiff argues that preventing Grantham from testifying as to whether the symptoms she observed in the deceased were consistent with delirium was prejudicial error. The plaintiff did not offer Grantham as an expert.

Rule 701 establishes the standard for a lay witness' testimony:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701.

In this case Grantham was properly allowed to testify as a lay witness about her personal observations of the deceased, including what she wrote in the deceased's chart and the treatment the deceased was given while at NGH. She was not, however, qualified to testify as an expert and could not testify to whether the deceased showed symptoms of delirium or whether she was given too much medication while at NGH and such testimony was properly excluded. *See State v. Bowman*, 84 N.C. App. 238, 244, 352 S.E.2d 437, 440 (1987); *see also Maloney v. Hosp. Sys.*, 45 N.C. App. 172, 176-78, 262 S.E.2d 680, 682-84, (only nurse qualified as expert could give opinion on whether patient's condition was caused by medical procedure), *disc. rev. denied*, 300 N.C. 375, 267 S.E.2d 676 (1980); 31A Am. Jur. 2d *Expert and Opinion Evidence* § 203, at 207 (lay witnesses cannot express an opinion that an individual was or was not afflicted with a particular disease "when that disease does not occur so commonly or have such readily recognizable symptoms as to be capable of diagnosis or identification by persons of ordinary experience, knowledge, and training").

No Error—NGH.

No Error—Thompson.[1]

Judge JOHN concurs with Judge WALKER.

---

1. Because Judge John joins Judge Walker's dissenting opinion, that opinion represents the majority opinion on the issue raised in that dissent with Judge Greene's opinion on that issue representing the dissent.

IN RE VAN KOOTEN

[126 N.C. App. 764 (1997)]

Judge WALKER concurring in part and dissenting in part with separate opinion.

Judge WALKER concurring in part and dissenting in part.

I respectfully dissent from that part of the majority opinion which grants plaintiff a new trial as to defendant Thompson.

In the case of *Galloway v. Lawrence*, 266 N.C. 245, 145 S.E.2d 861 (1966), our Supreme Court determined that the trial judge expressed an opinion as to some of the evidence favorable to the defendant physician. Also, the trial judge, in the presence of the jury, found the defendant physician to be an expert in surgery. In granting a new trial, the Supreme Court held that the comments by the trial judge concerning the admissibility of the evidence <u>and</u> the finding in the presence of the jury that the defendant physician was an expert in surgery were impermissible expressions of opinion prejudicial to the plaintiff. However, the Court concluded there was no error in permitting the defendant to testify as an expert witness.

[5] Here, defendant Thompson, without objection, testified as to his background, training and experience in the field of psychiatry. In the presence of the jury, the trial court found defendant Thompson to be an expert in the field of psychiatry. I conclude that such finding does not constitute prejudicial error.