STATE OF NORTH CAROLINA v. ANNA M. JACOBS MERRILL

No. COA99-274

(Filed 6 June 2000)

**1. Conspiracy— criminal—sufficiency of evidence—passive cognizance**

The trial court erred by denying defendant's motion to dismiss the charge of conspiracy to commit murder because: (1) mere passive cognizance of the crime or acquiescence in the conduct of others will not suffice to establish a conspiracy since the conspirator must share the purpose of committing the felony; and (2) the evidence merely establishes a conversation in which defendant made no response to her brother's suggestions to murder the victim, defendant's departure for a camping trip the night of the victim's death, and defendant's assistance in concealing the crime.

**2. Evidence— lay opinion—multiple personality disorder**

Although the trial court erred by admitting the testimony of defendant's husband that defendant suffered from a multiple personality disorder since a lay witness may not express an opinion as to the existence or nonexistence of a disease or disorder when a person of ordinary experience, knowledge, or training cannot diagnose that disease, it was not prejudicial error in light of the other evidence properly admitted at trial showing defendant's guilt as an accessory after the fact. N.C.G.S. § 8C-1, Rule 701; N.C.G.S. § 15A-1443(a).

**3. Evidence— hearsay—state of mind exception—motive**

The testimony of defendant's brother concerning whether the victim forced defendant to have sex in order to visit her children was not hearsay because: (1) the testimony was not offered to

STATE v. MERRILL

[138 N.C. App. 215 (2000)]

prove the truth of the matter asserted; (2) the testimony was introduced in an attempt to illustrate the brother's state of mind regarding the victim, and to show the brother's motive for killing the victim; and (3) ill-will between a defendant and a crime victim is generally relevant to show possible motive for the crime. N.C.G.S. § 8C-1, Rule 801(c).

**4. Criminal Law— joinder of defendants—motion to sever— no abuse of discretion**

The trial court did not abuse its discretion by granting the State's motion for joinder of defendant and her brother for trial and by denying defendant's motion to sever, even though defendant contends she was deprived of a fair trial based on the testimony of a clinical psychologist stating that defendant's brother was concerned for defendant's mental health and that the antagonism between the victim and the brother was increased by defendant's report that the victim forced her to have sex in order to get her children back, because: (1) defendant was neither tried nor convicted of murder, and the effect of the pertinent testimony is largely irrelevant to defendant's actual conviction as an accessory after the fact; (2) the testimony focused on developing the brother's state of mind, and any reference to defendant marginally effected defendant's own case; and (3) the State presented plenary evidence of defendant's guilt on the crime of accessory after the fact.

Appeal by defendant from judgment entered 4 September 1998 by Judge Zoro J. Guice, Jr. in Transylvania County Superior Court. Heard in the Court of Appeals 25 January 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Roy D. Neill for the defendant-appellant.*

LEWIS, Judge.

Defendant Anna M. Jacobs Merrill was tried at the 24 August 1998 session of Transylvania County Superior Court for conspiracy to commit murder and accessory after the fact to the felony of murder. The jury returned a verdict of guilty on 4 September 1998. Defendant received consecutive sentences of 157 to 298 months for the conspiracy conviction and six to eight months for the accessory after the fact conviction.

**STATE v. MERRILL**

[138 N.C. App. 215 (2000)]

Although defendant Anna M. Jacobs Merrill ("defendant") is the sole defendant in this appeal, she was tried jointly with defendant Frank Schlaepfer, who was convicted of first-degree murder and conspiracy to commit murder. Tim Merrill, defendant's husband, was indicted for conspiracy to commit murder and accessory after the fact to the felony of murder, but entered into a plea agreement with the State and did not stand trial.

The State's evidence tended to show the following. In February 1992, defendant married Shaun Lee Jacobs, the victim. Upon their divorce several years later, the victim received custody of their two children. In 1996, this custody arrangement was modified, allowing defendant custody of the children during the 1996-97 school year, and was subject to modification in May 1997. Custody and visitation rights were a source of tension between defendant and the victim after their divorce.

On 6 May 1997, defendant married Tim Merrill. The couple lived with Schlaepfer, defendant's brother, in Brevard, North Carolina, located in Transylvania County. At the time of his death, the victim was living in Fairview, North Carolina, located in Buncombe County.

On 28 May 1997, Detective Wayne Guffey of the Rutherford County Sheriff's Department received a missing persons report on the victim and began an investigation. Pursuant to this investigation, defendant was interviewed by several detectives on 4 June 1997. Following the interview, defendant directed detectives to a 55-gallon steel drum located down an embankment 30 to 50 feet from the road in Henderson County. Inside the drum, the detectives discovered the victim's body. John Butts, the Chief Medical Examiner for the State of North Carolina, testified that the victim's death occurred on or around 24 May 1997. Examination of the victim's body revealed three gunshot wounds, the fatal one located in the back of the victim's head and two others in the victim's foot.

On the evening of 23 May 1997, defendant, Tim Merrill and defendant's children went camping in Cherokee, at the Indian Creek Campground. They returned at around noon on 24 May, the next day. Upon their return, Schlaepfer informed defendant and Tim Merrill that Shaun Lee Jacobs had been killed at their residence that morning. Schlaepfer testified that Jacobs arrived at the residence at 8:30 a.m. to pick up the children and became angry when Schlaepfer told him they were not there. A fight ensued, during which Schlaepfer shot and killed Jacobs.

STATE v. MERRILL

[138 N.C. App. 215 (2000)]

[1] Defendant first argues the trial court improperly denied defendant's motion to dismiss the charge of conspiracy to commit murder for insufficiency of the evidence. To withstand defendant's motion to dismiss, the State had to show substantial evidence as to each of the essential elements of the crime. *State v. Workman*, 309 N.C. 594, 598, 308 S.E.2d 264, 267 (1983). The trial court must consider all the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Cox*, 303 N.C. 75, 87, 277 S.E.2d 376, 384 (1981).

The elements of conspiracy to commit murder are (1) defendant entered into an agreement with at least one other person; and (2) the agreement was for an unlawful purpose, here, to commit or assist in committing murder. *State v. Larrimore*, 340 N.C. 119, 156, 456 S.E.2d 789, 809 (1995). Defendant disputes that the State put forth substantial evidence establishing any such agreement between defendant and Schlaepfer.

As soon as the union of wills for the unlawful purpose is perfected, the crime of conspiracy is complete, *State v. Goldberg*, 261 N.C. 181, 202, 134 S.E.2d 334, 348, *cert. denied*, 377 U.S. 978, 12 L. Ed. 2d 747 (1964), and no overt act is required. *State v. Gibbs*, 335 N.C. 1, 47, 436 S.E.2d 321, 347 (1993). The agreement may be established by direct or circumstantial evidence, which establishes either an express agreement or a "mutual, implied understanding." *State v. Smith*, 237 N.C. 1, 16, 74 S.E.2d 291, 301 (1953).

The State asserts that the following conversation, where defendant, Tim Merrill and Schlaepfer were present, establishes an agreement to murder between defendant and Schlaepfer. According to the testimony of Tim Merrill, this exchange took place at their residence on either 13 or 14 May 1997, ten or eleven days before the victim's death:

A. Okay. Me and my wife were sitting in the kitchen table, and I was doing some paperwork on-the-job, because a bid for a job that I was going to try to get. [Defendant] was sitting beside me with a coloring book, and [Schlaepfer] was in the living room. He said that he had an idea how to take care of [the victim].

Q. Who was he talking to?

A. He was talking to [defendant].

Q. All right.

A. And [defendant] said, "How is that?" [Schlaepfer] said for him—for [defendant] to call [the victim] and tell him . . . to come over to the trailer, that [Tim Merrill and defendant] had separated and that when [the victim] came over, that [Schlaepfer] would take care of him. And [Schlaepfer] asked me if I cared . . . .

Q. What did you say?

A. I didn't care because I wasn't really paying attention—my mind was on my paperwork, and didn't really know what was coming out of my mouth when I said, "I don't care."

Q. Did [defendant] say anything after [Schlaepfer] made that statement?

A. No.

Q. About I will know how to take care of him?

A. No, sir.

Q. Was there any other conversation along those lines at that time, talking about [the victim] and how to take care of him?

A. No.

(4 Tr. at 129-130). The State also elicited testimony from Ned Whitmire, an agent with the State Bureau of Investigation, as to the same conversation:

A. Well, [Tim Merrill] . . . was working with his invoices that he had some job that he was planning to do or wanting to make a bid on. And that [Schlaepfer] was in the living room, and that he said that he had an idea of how to take care of the problem with [the victim]. That [Schlaepfer] knew that they, meaning [Tim Merrill and defendant], had gone to an attorney to talk about custody over these kids. And [defendant] was saying that she was not going to give up these kids, and he didn't want to give them up either.

Q. "He" being who?

A. [Tim Merrill.] And he indicated then, even if he, Tim Merrill, had to kill [the victim] himself, he wasn't going to give them

> up. He said that [Schlaepfer] had an idea, and [defendant] asked him what it was. [Schlaepfer] said for [defendant] to call [the victim] and tell him that they had separated and that she was upset and wanting [the victim] to come take her for a ride on his motorcycle. When [Schlaepfer] came to the house, [Tim Merrill and defendant] would be gone and he, [Schlaepfer], would kill [the victim]. And [Schlaepfer] said nothing else after he said that.

(7 Tr. at 39-40.) The State argues that defendant "discussed" plans to kill the victim in this conversation, which established an agreement to murder. There is no evidence that defendant responded in any way to Schlaepfer's proposed plan. Viewed in the light most favorable to the State, this conversation does not reveal that defendant assented at that time, either expressly or implicitly, to Schlaepfer's proposition. Absent some suggestion of assent, not even a mutual, implied understanding is established by this evidence.

While the State's direct evidence relevant to the existence of an agreement between defendant and Schlaepfer to murder the victim fails, an agreement or understanding for the purposes of conspiracy may be inferred from the conduct of the parties. *State v. Bell*, 338 N.C. 363, 393, 450 S.E.2d 710, 727 (1994). Such conduct may consist of a number of indefinite acts, each of which, standing alone, may have little weight, but, taken collectively, point unerringly to the existence of a conspiracy. *State v. Rannels*, 333 N.C. 644, 659, 430 S.E.2d 254, 262 (1993).

The State's evidence established that a telephone call was made to Jacobs' residence on 23 May 1997, the day before his death. It was established that a call made from defendant's residence to the victim's residence would be long distance. Tim Merrill testified he placed a block on the telephone in their residence, such that no long distance calls could be made from their telephone. Marshall Johnson, defendant's neighbor, testified that defendant, Tim Merrill and Schlaepfer had used his telephone to make long distance calls on several occasions. The phone jack they used when making these calls was located outside. The State introduced into evidence Johnson's telephone bill, which revealed a telephone call placed to the victim's residence on 23 May. Johnson testified he was not home when the call was made. The State presented no evidence as to the identity of the caller. Evidence that defendant placed the 23 May phone call may have supported a reasonable inference that defendant assisted in furthering Schlaepfer's plan. This could have provided a basis to

infer her taking part in a conspiracy. Without such evidence, there is no inference.

The State also points to the testimony of Charles Robinson, Schlaepfer's friend, establishing that Schleapfer arranged for defendant and Tim Merrill to borrow money to go camping on 23 May 1997. Robinson testified that he loaned defendant and Merrill ten dollars that evening, in accordance with Schlaepfer's request. The State contends this evidence establishes defendant's assent through furtherance of Schlaepfer's proposed plan. We disagree. Absent any evidence linking this arrangement to the proposed plan, it may be reasonably inferred only that Schlaepfer arranged for defendant and Tim Merrill to go camping.

If the State's evidence did establish that defendant borrowed this money in conjunction with Schlaepfer's proposed plan, without more, a reasonable inference would exist that defendant borrowed money from Robinson knowing that when she departed, Schlaepfer planned to kill the victim. This evidence, without any further participation by defendant, would still not allow us to infer her agreement to murder the victim. Mere passive cognizance of the crime or acquiescence in the conduct of others will not suffice to establish a conspiracy. The conspirator must share the "purpose of committing [the] felony." Model Penal Code § 5.03 cmt. (2)(c)(I), at 407 (1962); *see also Bates v. People*, 498 P.2d 1136, 1138 (Colo. 1972); *Worden v. State Police Merit Board*, 174 N.E.2d 407, 407 (Ill. App. Ct. 1961); *State v. Mariano*, 934 P.2d 315, 317 (N.M. Ct. App. 1997). It is not sufficient that the actor only believe that the result would be produced, but did not consciously plan or desire to produce it.

The State points to other instances of defendant's conduct to establish a conspiracy to murder. This evidence includes defendant's expressions of her desire that the victim be dead. These comments, however, were made by defendant long before the conversation between defendant, Tim Merrill and Schlaepfer took place. None of defendant's expressions of this desire were introduced in relation to Schlaepfer's plan. The State also points to evidence establishing that defendant participated in efforts to hide the victim's body and personal belongings, and initially attempted to deceive law enforcement officers regarding the victim's disappearance. Although concealment of a crime is condemned by our law and may be strongly probative in some contexts, defendant's conduct relative to concealment here does not create a reasonable inference of her assent in Schlaepfer's plan. The evidence merely establishes the conversation on 13 or 14

May in which defendant made no response to Schlaepfer's suggestions, defendant's departure for Cherokee the night of the victim's death, and defendant's assistance in concealing the crime. Collectively, this evidence does not point, expressly or impliedly, to the existence of a conspiracy. We hold it was error for the trial court to deny defendant's motion to dismiss on the charge of conspiracy to murder. We therefore reverse defendant's conviction for conspiracy. We review defendant's remaining assignments of error as they effect defendant's conviction for accessory after the fact.

[2] Defendant next argues the trial court admitted testimony by Tim Merrill that defendant suffered from multiple personality disorder in violation of Rules of Evidence 701, 404 and 403. On cross-examination of Tim Merrill, Schlaepfer's attorney asked, "Isn't it true that [defendant] suffers from some sort of mental or multiple personalities disorder?" Tim Merrill responded affirmatively. (5 Tr. at 29.) Schlaepfer's counsel did not ask Tim Merrill any other questions regarding defendant's purported mental disorders. Rule 701 establishes the standard for a lay witness' testimony:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.R. Evid. 701.

We have long held that a lay witness who has had a reasonable opportunity to observe another is permitted to express an opinion on the issue of mental capacity, when relevant. *State v. Hammonds*, 290 N.C. 1, 5-6, 224 S.E.2d 595, 598 (1976). However, a lay witness may not express an opinion as to the existence or nonexistence of a disease or disorder, when that disease does not occur so commonly or have such readily recognizable symptoms as to be capable of diagnosis by persons of ordinary experience, knowledge or training. *State v. Davis*, 349 N.C. 1, 30, 506 S.E.2d 455, 471 (1998); *Sherrod v. Nash General Hospital, Inc.*, 126 N.C. App. 755, 763, 487 S.E.2d 151, 156 (1997). The question posed by Schlaepfer's attorney effectively called for Tim Merrill, a lay witness, to make a psychiatric diagnosis of defendant's mental condition. No foundation was laid to show that Tim Merrill had the expertise to make a diagnosis and no facts were elicited establishing the basis for such an assessment. While it may have been appropriate to ask about defendant's mental capacity if deemed

relevant, it was beyond Tim Merrill's ability as a lay witness to testify as to a specific psychiatric diagnosis of defendant having "multiple personalities."

Although it was error to admit this testimony, we hold it was not prejudicial in light of the other evidence properly admitted at trial. Again, we consider error solely as to defendant's conviction for accessory after the fact. Defendant must show that, absent the contested testimony by Tim Merrill, there is a reasonable possibility the jury would have reached a different result. N.C. Gen. Stat. § 15A-1443(a) (1999).

The State presented the testimony of several witnesses regarding defendant's assistance to Schlaepfer to conceal the murder. Officer Wayne Guffey of the Rutherford County Sheriff's Department and Detective Donald Cole of the Buncombe County Sheriff's Department testified that defendant led them to an isolated area where the body was located. Tim Merrill testified that he and defendant bought supplies used to hide the victim's body and helped destroy evidence of the crime. Tim Merrill also testified that defendant joined Schlaefer in moving the victim's body from their residence to another location. The State presented plenary evidence of defendant's guilt as an accessory after the fact. This evidence supercedes any effect the erroneously admitted question and answer could have produced. Because any error was harmless, we find it unnecessary to address defendant's contention that admission of this testimony violated Rules 404 and 403.

[3] Defendant next argues certain testimony by Schlaepfer was inadmissible as multiple hearsay. During cross-examination by the prosecution, Schlaepfer explained the relationship between defendant and the victim after their separation, including the tension surrounding custody of their children:

Q. Did [defendant] tell you that [the victim] forced her to have sex on occasions when—in order to let her have the children—. . . for visitation?

A. He wanted to get back with her. He done everything he could.

Q. But didn't [defendant] tell you that [the victim] forced her to have sex with him in order to get her visitation?

A. That was [defendant's ex-boyfriend] that told me that, when they went to Michigan . . . .

Q. This idea of somebody forcing themselves on [defendant], you didn't like that at all, did you?

A. I never thought anything about it. I mean, at that point, I just—

Q. That didn't remind you of what your father used to do years before?

(8 Tr. at 26-27.)

The definition of hearsay under Rule 802 is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c). If a statement is offered for any purpose other than for proving the truth of the matter asserted, it is not objectionable as being hearsay. 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 195 (5th ed. 1998). This testimony was not offered to prove the truth of the matter asserted; whether or not the victim actually forced defendant to have sex in order to visit her children was immaterial. Instead, this testimony was introduced in an attempt to illustrate Schlaepfer's state of mind regarding the victim, and tended to show motive. *State v. Robbins*, 275 N.C. 537, 547, 169 S.E.2d 858, 865 (1969). Ill will between a defendant and a crime victim is generally relevant to show possible motive for the crime. *State v. Greene*, 324 N.C. 1, 16, 376 S.E.2d 430, 439 (1989), *death sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990).

[4] In her last assignment of error, defendant contends the trial court erred in granting the State's motion for joinder of defendants for trial and in denying her motion to sever. N.C. Gen. Stat. § 15A-926(b)(2) provides in part:

Upon written motion of the prosecutor, charges against two or more defendants may be joined for trial: . . .

b. When, even if all of the defendants are not charged with accountability for each offense, the several offenses charged:

1. Were part of a common scheme or plan; or

2. Were part of the same act or transaction; or

3. Were so closely connected in time, place and occasion that it would be difficult to separate proof of one charge from proof of the others.

Clearly, defendant's case falls within the parameters of G.S. 15A-926(b)(2). "When joinder is permissible under the statute,

whether to sever trials or deny joinder is a question lodged within the discretion of the trial judge whose rulings will not be disturbed on appeal unless it is demonstrated that joinder deprived defendant of a fair trial." *State v. Ruffin*, 90 N.C. App. 712, 714, 370 S.E.2d 279, 280 (1988). Without a showing that joinder has deprived a defendant of a fair trial, the trial judge's discretionary ruling on the question will not be disturbed on appeal. *State v. Burton*, 119 N.C. App. 625, 630, 460 S.E.2d 181, 186 (1995).

Defendant contends she was deprived of a fair trial because of certain testimony by Dr. Stansbury, a clinical psychologist who testified as Schlaepfer's witness. In his testimony, Dr. Stansbury mentioned that Schlaepfer was concerned for defendant's mental health, and that "[t]he antagonism between [the victim] and [Schlaepfer] was increased by [defendant's] report that [the victim] forced her to have sex in order to get her children back." (8 Tr. at 149-50.)

Defendant contends that when viewed in light of Tim Merrill's testimony that defendant suffered from multiple personalities, the testimony of Dr. Stansbury unfairly suggested defendant was "mentally ill" and thus, had a motive to kill the victim. We first note that defendant was neither tried nor convicted of murder; thus, this purported effect is largely irrelevant to defendant's actual conviction as an accessory after the fact. We also note that Dr. Stansbury's testimony clearly focused on developing Schlaepfer's state of mind, and any reference to defendant therein marginally effected defendant's own case. Furthermore, when we consider this testimony in light of all of the other evidence in the case, as is required under G.S. 15A-927(c)(2), *Burton*, 119 N.C. App. at 630, 460 S.E.2d at 186, we again emphasize that the State presented plenary evidence of defendant's guilt on the crime of accessory after the fact. There was no error in the trial court's denial of defendant's motion to sever.

No prejudicial error as to defendant's conviction of accessory after the fact to the felony of murder.

Reversed as to defendant's conviction of conspiracy to commit murder.

Remanded for resentencing on the conviction of accessory after the fact to the felony of murder.

Judges GREENE and EDMUNDS concur.